PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-3478
_____

UNITED STATES OF AMERICA

v.

MICHAEL NORWOOD,
                                          Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D. N.J. No. 1-96-cr-00232-001)

District Judge:  Honorable Robert B. Kugler

_____

Argued May 26, 2022

Before: KRAUSE, PHIPPS, *Circuit Judges*, and STEARNS[*],
                                          *District Judge*

(Filed: September 8, 2022)


Beresford L. Clarke [ARGUED]
Sean E. Andrussier
Lauren Johnson
Karen L. Sheng
Margaret (Emmy) Wydman

_____

[*] The Honorable Richard G. Stearns, District Judge for the
District of Massachusetts, sitting by designation.

Duke University School of Law
210 Science Drive
Box 90360
Durham, NC 27708
    *Court Appointed Amicus Curiae for Appellant*

Steven G. Sanders [ARGUED]
Sabrina G. Comizzoli
Mark E. Coyne
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102
    *Counsel for Appellee*

———————————

OPINION

———————————

KRAUSE, *Circuit Judge*

In the nearly four decades since Congress enacted the Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. § 3363 (1994), restitution has become ubiquitous in federal sentencing. Recognizing the importance of making victims of crimes whole to the extent possible, Congress gave district courts discretion to order restitution in addition to any term of imprisonment for certain offenses. But it also recognized that the obligation to make payments indefinitely could saddle criminal defendants, especially those poor and indigent, with insurmountable burdens as they sought to reintegrate into society while subject to collection, compounding interest, the looming threat of default, and the

collateral consequences that attach to ongoing criminal liability. The balance it struck in the VWPA was to limit the duration of a defendant's restitutionary liability to twenty years.

A decade later, however, the balance had shifted, and the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A, made restitution mandatory and extended the duration of defendants' payment obligations by decades for those sentenced after its effective date—even those, like Appellant Michael Norwood, who had committed their offenses when the VWPA was still in effect. In this appeal, we must decide whether retroactively applying the MVRA to extend the duration of Norwood's restitutionary liability violates the Ex Post Facto Clause of the Constitution, U.S. Const. art. I, § 9, cl. 3. For the reasons that follow, we conclude that it does, and we will reverse the contrary order of the District Court.

## I.    Background

### A.    Statutory Background

When Congress enacted the MVRA in 1996, it amended the law governing restitution for criminal defendants in a number of respects. It also recognized, in doing so, that there might be constitutional limitations on the Act's retroactive application. Congress therefore set an effective date of April 24, 1996, and provided that the MVRA would only apply to sentencings for convictions occurring on or after that date, and only "to the extent constitutionally permissible." 18 U.S.C. § 2248 (statutory notes).

3

The statute that governed criminal restitution before the MVRA was the Victim and Witness Protection Act of 1982. Under the VWPA, when a court sentenced a defendant convicted of certain crimes, it had discretion to "order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(1) (1994). Such restitution orders, in turn, could be enforced by the United States "in the manner provided for the collection and payment of fines in subchapter B of chapter 229 of this title." *Id.* at § 3663(h)(1)(A). That provision referred to 18 U.S.C. § 3613, which provided that a fine—and thus a restitution order—"is a lien in favor of the United States upon all property belonging to the person fined," and that "[t]he lien arises at the time of the entry of the judgment and continues until the liability is satisfied, remitted, or set aside, or until it becomes unenforceable pursuant to the provisions of subsection (b)." Finally, subsection (b) provided that "[a] lien becomes unenforceable and liability to pay a fine expires . . . twenty years after the entry of the judgment." *Id.* at § 3613(b)(1). In other words, under the VWPA, when a criminal judgment imposed a restitution order, it created a lien by operation of law and started a twenty-year clock running, and when that clock ran out, two things happened: the lien became unenforceable, and the defendant's liability to pay expired.

On April 24, 1996, Congress enacted the MVRA, which amended these laws in significant ways. First, the MVRA—unlike the VWPA—makes restitution mandatory. *See* 18 U.S.C. § 3663A(a)(1). Second, though the MVRA also provides for restitution orders to be enforced like fines by

4

creating a lien in favor of the United States,[1] it provides that such liens persist as long as a defendant remains liable to pay. *See id.* at § 3613(c). And—most importantly for purposes of this case—it provides that a defendant's "liability to pay a fine shall terminate *the later of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person fined*." 18 U.S.C. § 3613(b) (emphasis added). In short, under the MVRA, a restitution lien never becomes unenforceable, and a defendant's liability to pay expires not twenty years after entry of the defendant's judgment, but twenty years after the defendant's release from imprisonment, resulting in a significantly longer period of liability than under the VWPA.

## B. Factual and Procedural Background

Just twelve days before the MVRA took effect, Appellant Michael Norwood committed a bank robbery in New Jersey, and was charged with a number of federal crimes.[2]

---

[1] MVRA § 3663A(d) provides that "[a]n order of restitution under this section shall be issued and enforced in accordance with section 3664," 18 U.S.C. § 3663A(d), and § 3664, in turn, points to "subchapter B of chapter 229 of this title," meaning the amended version of § 3613, 18 U.S.C. § 3664(m)(1)(A)(i).

[2] Specifically, Norwood was charged with one count of bank robbery, *see* 18 U.S.C. § 2113(a), one count of armed bank robbery, *see id.* at § 2113(d), one count of carjacking, *see id.* at § 2119, two counts of using a firearm in relation to a crime of violence, *see id.* at § 924(c), and one count of possession of a firearm by a felon, *see id.* at §§ 922(g)(1) and 924(e).

He was convicted on all six counts and sentenced on May 30, 1997, to life plus twenty-five years in prison. In connection with his counts of conviction for bank robbery and armed bank robbery, Norwood's sentence also included a restitution order totaling $19,562.87.[3] Norwood appealed his conviction, but we affirmed. *See United States v. Norwood*, No. 97-5346 (3d Cir. Feb. 10, 1998).

Because Norwood's conduct occurred before the MVRA took effect, his restitution was governed by the VWPA. *Cf. United States v. Edwards*, 162 F.3d 87, 88-89 (3d Cir. 1998). This meant that the Government's lien was set to become unenforceable, and Norwood's liability to pay was set to expire, twenty years after the entry of judgment—on May 30, 2017.

Since his initial sentencing, Norwood has filed several successful habeas petitions under 28 U.S.C. § 2255 and has been resentenced three times. Because these proceedings are central to both parties' arguments on appeal, we recount them, and their effects on Norwood's restitution obligation, in relevant detail.

First, in 1999, Norwood successfully argued that the District Court miscalculated the offense level for his count of conviction for possession of a firearm by a felon. *See Norwood v. United States*, No. 1:99-cv-18 (D.N.J. June 29, 1999). The District Court resentenced Norwood to 327 months imprisonment on that count, bringing his total term of imprisonment to 627 months. This resentencing left

---

[3] This amount reflects $15,428.00 in losses to the bank Norwood robbed and $4,134.87 in losses to the owner and insurer of the car Norwood stole in the course of the robbery.

6

Norwood's sentences intact as to all other counts, including the bank robbery counts for which restitution had been ordered. Norwood appealed this new sentence, but we denied a certificate of appealability. *See United States v. Norwood*, Nos. 99-5510 & 99-5992 (3d Cir. July 28, 2000).

Second, in 2010, Norwood filed another § 2255 petition claiming a Double Jeopardy violation on the grounds that his conviction for bank robbery was a lesser included offense of his conviction for armed bank robbery. *See Norwood v. United States*, 1:10-cv-6744 (D.N.J. Dec. 23, 2010). The District Court originally dismissed Norwood's petition as second or successive, but the Government conceded the Double Jeopardy issue on appeal, and we remanded. On remand, the District Court dismissed Norwood's conviction for bank robbery entirely and resentenced him on all other counts. There was no change to his total term of imprisonment, and the sentencing court expressly stated that "all other conditions of the judgment of conviction . . . shall remain in full force and effect." App. 166. The amended judgment also reiterated Norwood's obligation to pay restitution.

Third, in 2013, Norwood appealed his new sentence, arguing that it had been imposed before the Supreme Court held in *United States v. Booker*, 543 U.S. 220 (2005), that the Sentencing Guidelines were not mandatory, and both Norwood and the Government moved to remand for *de novo* sentencing, which we granted by issuing an order vacating Norwood's 2012 sentencing order. At resentencing, the District Court reduced Norwood's sentences on two counts and issued a new amended judgment. The District Court made no mention of Norwood's restitution obligations during the resentencing hearing, and its amended judgment again simply reiterated the same restitution obligation that had been in effect since 1997.

7

Norwood appealed this order on other grounds, but we affirmed. *See United States v. Norwood*, 566 F. App'x 123, 128 (3d Cir. 2014).

As we trace Norwood's restitution order along this complicated procedural journey, it is clear that his restitution order was not disturbed in any way by his first habeas petition, which only affected a separate count on which restitution had not been imposed. His second habeas petition resulted in the dismissal of one of the two counts on which restitution was based but had no effect on either Norwood's term of imprisonment or his restitution obligation. And though his third habeas petition resulted in his sentence being reduced, it also purported to leave his restitution undisturbed.

Like many inmates, Norwood's personal funds are held in an inmate trust account maintained by the Bureau of Prisons ("BOP"), into which friends and family may make deposits. *See* 28 C.F.R. § 506.1. As of June 21, 2016, Norwood's account had a balance of $6,031.40. When the U.S. Attorney's office for the District of New Jersey learned of this balance, it moved the District Court to authorize the BOP to turn over all but $100 of those funds to satisfy Norwood's outstanding restitution. The ensuing dispute continued until May 30, 2017, the twenty-year anniversary of Norwood's original judgment and restitution order when, under the VWPA, his liability to pay would have expired and the Government's lien would have become unenforceable. Accordingly, Norwood argued that the Government could no longer enforce his restitution order under the VWPA, and that applying the MVRA's longer liability period would violate the Ex Post Facto Clause.

The District Court disagreed. In February 2020, it granted the Government's motion and authorized the BOP to

turn over the funds from Norwood's inmate account. The District Court held in relevant part that applying the MVRA to Norwood's restitution order would not violate the Ex Post Facto Clause because "the Government's reliance on the MVRA's procedure for ensuring the payment of restitution in no way increases a criminal defendant's penalty." App. 241.

Norwood appealed, and we vacated the District Court's order. On the ex post facto issue, we noted that applying the MVRA's longer liability period to Norwood's restitution order "may indeed raise ex post facto concerns" because doing so "would increase the *duration* of his liability and thus, as a practical matter, might increase the amount that he ultimately must pay." App. 252-53 n.1 (emphasis in original). We did not, however, rule on the ex post facto question because we observed that doing so might not be necessary if the VWPA could be construed to allow for the collection of funds from Norwood's account. Specifically, we contemplated two possibilities: first, that "[t]here may be some question whether the District Court's amended judgments triggered a new 20-year period of restitutionary liability under the VWPA," App. 253-54; and second, that "there may be some question whether Norwood's funds would remain subject to his restitutionary obligation even under the VWPA because the Government timely sought them before his liability expired," App. 254. We remanded to the District Court to address these questions and then to "address what, if anything, remains of Norwood's ex post facto challenge." App. 255.

On remand, the District Court did not consider the ex post facto question. Instead, it held that the Government could enforce its lien against Norwood under the VWPA because it filed its motion to do so before May 30, 2017. The District Court based its holding on the MVRA's version of § 3613,

9

which provides that restitution liens shall be treated "as if the liability of the person fined were a liability for tax assessed under the Internal Revenue Code of 1986." 18 U.S.C. § 3613(c). Under the relevant portion of the tax code, "[i]f a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy *shall be extended and shall not expire until the liability for the tax . . . is satisfied or becomes unenforceable*." 26 U.S.C. § 6502(a) (emphasis added). Based on this language, the District Court concluded that collection was proper insofar as the Government commenced its enforcement action before May 30, 2017, and thus there was no ex post facto issue.

Norwood appealed on several grounds, not the least of which being that § 6502(a)'s enforcement mechanism—upon which the District Court relied—was only incorporated by the MVRA, and not the VWPA. Because this case presented a variety of complicated statutory and constitutional issues, and because Norwood has elected to proceed *pro se*, we appointed amicus counsel.[4]

## II.     Jurisdiction and Standard of Review

The District Court had jurisdiction over Norwood's criminal case under 18 U.S.C. § 3231. We have jurisdiction

---

[4] We express our gratitude to Sean E. Andrussier and the student advocates of the Duke University School of Law's Appellate Litigation Clinic for accepting this matter *pro bono*, and we commend them for their excellent briefing and argument. Lawyers who act *pro bono* fulfill the highest service that members of the bar can offer to the legal profession.

10

under 28 U.S.C. § 1291. Because this case presents only questions of law, both constitutional and statutory, our review of those issues is *de novo*. *See United States v. Tyson*, 947 F.3d 139, 142 (3d Cir. 2020); *Radiowala v. Att'y Gen.*, 930 F.3d 577, 581 (3d Cir. 2019).

## III. Discussion

Before we consider whether retroactive application of the MVRA's liability period to Norwood's restitution order poses an ex post facto problem, we must first resolve whether the VWPA itself allows for the Government's enforcement effort. If the Government can collect under the VWPA, then there would be no need for us to consider the retroactive effect of applying the MVRA. But for the reasons that follow, we conclude that the Government's lien is unenforceable under the VWPA, so an ex post facto analysis of the MVRA's application is necessary. We address first the VWPA, then explain why retroactive application of the MVRA here would be unconstitutional.

### A. The VWPA Does Not Permit the Government's Collection

#### 1. The VWPA Applies to Norwood's Restitution Lien

As an antecedent question, we asked the parties to address whether the VWPA's twenty-year liability period applies to a defendant's obligation to pay restitution. To resolve this question, we must carefully distinguish between a defendant's underlying restitution order and the particular mechanism through which that order may be enforced.

11

The VWPA provides for three ways to enforce a restitution order. First, the United States may enforce the order "in the manner provided for the collection and payment of fines in [18 U.S.C. § 3613]." 18 U.S.C. § 3663(h)(1)(A) (1994). Second, the United States may enforce the order "in the same manner as a judgment in a civil action." *Id.* Third, the order may be enforced "by a victim named in the order to receive the restitution, in the same manner as a judgment in a civil action." *Id.* at § 3663(h)(1)(B). Here, neither the Government nor any victim sought to enforce Norwood's restitution order as if it were a civil judgment, likely because doing so would have been futile,[5] and instead opted to enforce Norwood's restitution order as a fine.

---

[5] Under Federal Rule of Civil Procedure 69(a), money judgments are generally enforced by writs of execution, and the procedure for such writs "must accord with the procedure of the state where the court is located" and any applicable federal statutes. The relevant federal statute, 28 U.S.C. § 3201, provides that "[a] judgment in a civil action shall create a lien on all real property of a judgment debtor." This means that both the Government and a victim may only create a lien against a defendant's real property—of which Norwood has none. Understandably, the Government did not pursue this route, but even if it did, Norwood's obligation to pay would still have expired on May 30, 2017. Once a judgment lien is created under § 3201, it "is effective, unless satisfied, for a period of 20 years" unless it is renewed by "filing a notice of renewal in the same manner as the judgment is filed." 18 U.S.C. § 3201(c). Under New Jersey law, too, money judgments expire after 20 years unless revived by a court proceeding. *See* N.J. Stat. Ann. 2a:14-5. The Government, of

12

As discussed above, § 3613 created a lien to enforce Norwood's restitution order, which arose "at the time of the entry of the judgment," *id.* at § 3613(a), and which "[became] unenforceable . . . twenty years after the entry of the judgment," *id.* at § 3613(b)(1). Based on this statutory text, several Courts of Appeals have either assumed or held explicitly that the VWPA's twenty-year liability period applies to a defendant's obligations under a restitution lien. *See United States v. Delano*, 981 F.3d 1136, 1138-40 (10th Cir. 2020); *United States v. Blackwell*, 852 F.3d 1164, 1166 (9th Cir. 2017) (per curiam); *United States v. Ridgeway*, 489 F.3d 732, 736-37 (5th Cir. 2007); *United States v. Rostoff*, 164 F.3d 63, 67 (1st Cir. 1999); *United States v. Berardini*, 112 F.3d 606, 611 (2d Cir. 1997); *United States v. Fuentes*, 107 F.3d 1515, 1533 n.33 (11th Cir. 1997). While we have not squarely addressed this question, we see no reason to break from our sister circuits. The VWPA clearly incorporates § 3613's enforcement scheme, and there is no textual basis to suggest that it failed to incorporate that scheme's liability period. Accordingly, Norwood's restitution lien, and his obligation to pay it, is subject to the VWPA's liability period.

## 2. The 2013 Amended Judgment Did Not Reset Norwood's Liability Period

The VWPA provides that the lien created by a restitution order "becomes unenforceable and liability to pay a fine expires [] twenty years after the entry of *the judgment*." 18 U.S.C. § 3613(b)(1) (emphasis added). Norwood contends that the relevant "judgment" is his original 1997 judgment in

course, neither created nor renewed any judgment lien against Norwood.

which his restitution order was imposed, meaning the order became unenforceable in May 2017.

The Government, however, argues that the relevant "judgment" is the 2013 amended judgment.[6]  If so, then Norwood would remain liable until 2033.  Under this view, when we vacated Norwood's 2012 sentencing order and remanded for *de novo* resentencing, his original judgment and restitution order were voided, meaning that the only "judgment" that currently requires him to pay restitution is the

---

[6] The Government does not argue that either Norwood's 1999 amended judgment or his 2012 amended judgment are relevant for purposes of the VWPA's liability period.  We may safely disregard these judgments as well, as neither could have conceivably disturbed Norwood's restitution obligation in any way.  As discussed above, Norwood's restitution obligation was imposed based on his counts of conviction for bank robbery and armed bank robbery.  His 1999 resentencing, however, was limited to his count of conviction for possession of a firearm by a felon and did not affect any other count.  Likewise, while Norwood's 2012 resentencing vacated his bank robbery charge as a lesser included offense of his armed bank robbery charge, it left intact his entire sentence for the greater offense, including the restitution order; indeed, the District Court was clear that "all other conditions of the judgment of conviction . . . shall remain in full force and effect."  App. 165-66.  Accordingly, only the 2013 resentencing, which reduced Norwood's sentence on his armed bank robbery count, had the potential to affect his underlying restitution obligation.  As we explain, however, even the 2013 resentencing did not reset Norwood's original restitution order.

14

2013 amended judgment. Though the Government's argument appears solid at first glance, it collapses upon closer scrutiny.

### a. Our 2013 Order Did Not Vacate Norwood's Original Restitution Order

The Government's argument depends on our having vacated Norwood's original restitution order in 2013 and the District Court imposing a new one on remand; if that did not occur, then Norwood's original 1997 order is still in effect, and the VWPA's twenty-year liability would have run from that date. Upon inspection, we conclude that our 2013 Order did not vacate Norwood's restitution order.

At the outset, we note that our 2013 Order did not purport to disturb Norwood's underlying sentence and stated only that the 2012 "sentencing order of the District Court is hereby VACATED." App. 179. That 2012 sentencing order, moreover, did not purport to impose any restitution obligation on Norwood; rather, it provided that his restitution obligation from his prior sentence would "remain in full force and effect." App. 166. It would be strange, indeed, to conclude that vacating an order that purported to make no changes to Norwood's restitution obligation somehow had the effect of vacating the undisturbed restitution. The more natural reading is that both the District Court's 2012 Order and our 2013 Order were limited to the custodial components of Norwood's sentence and had no effect on his restitution order.

The Government disagrees and contends that because both Norwood and the Government moved for a *de novo* resentencing in 2012, our 2013 amended judgment must have automatically voided and replaced every component of

15

Norwood's earlier judgments, including restitution. What matters, however, is not the scope of resentencing that was requested, but the scope of what we actually ordered. On that front, our 2013 order was silent as to the scope of resentencing and, as discussed above, vacated only the District Court's 2012 sentencing order, not its underlying judgment.

When a remand is silent as to the scope of resentencing, our sister circuits are divided. For some, the default rule is that resentencing is *de novo* absent explicit instructions to the contrary from the appellate court. *See, e.g., United States v. Jennings*, 83 F.3d 145, 151 (6th Cir. 1996), *amended by* 96 F.3d 799 (6th Cir. 1996); *United States v. Cornelius*, 968 F.2d 703, 705-06 (8th Cir. 1992); *United States v. Ponce*, 51 F.3d 820, 826 (9th Cir. 1995); *United States v. Smith*, 930 F.2d 1450, 1456 (10th Cir. 1991); *United States v. Stinson*, 97 F.3d 466, 468-69 (11th Cir. 1996). For others, the default rule is the opposite, with resentencing assumed to be limited to those facts and issues made relevant by the remand unless the appellate court instructs otherwise. *See, e.g., United States v. Whren*, 111 F.3d 956, 960 (D.C. Cir. 1997); *United States v. Wallace*, 573 F.3d 82, 88 & n.5 (1st Cir. 2009); *United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004); *United States v. Husband*, 312 F.3d 247, 250-52 (7th Cir. 2002). The Second Circuit's default rule is that a vacatur of conviction is presumed to require a *de novo* resentencing, while a vacatur of a sentence is presumed to produce a limited resentencing. *See United States v. Quintieri*, 306 F.3d 1217, 1228 n.6 (2d Cir. 2002).

In *United States v. Miller*, we adopted our own rule, holding that when a defendant's conviction is vacated on appeal, *de novo* resentencing is appropriate if one or more of the sentences on the underlying convictions are interdependent. *See* 594 F.3d 172, 180 (3d Cir. 2010). This

16

approach follows from our Court's endorsement of the "sentencing package doctrine," which recognizes that, because a sentencing court will often "craft a disposition in which the sentences on the various counts form part of an overall plan," when one or more convictions is vacated, the resentencing court "should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture upon remand . . . if that appears necessary in order to ensure that the punishment still fits both crime and criminal." *United States v. Davis*, 112 F.3d 118, 122 (3d Cir. 1997).

We have not yet addressed precedentially whether *Miller* and the sentencing package doctrine applies where, as here, part of a defendant's sentence is vacated while leaving the underlying convictions undisturbed. *See United States v. Grant*, 9 F.4th 186, 200 (3d Cir. 2021) (en banc). There are strong, commonsense arguments for extending *Miller*'s reasoning to vacated sentences. Our precedent recognizes that there is "a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan," *Davis*, 112 F.3d at 122, and such a careful plan may be upset just as surely by a vacated sentence as by a vacated conviction, *see Grant*, 9 F.4th at 215 (Ambro, J., concurring) ("[I]t makes little difference whether the conviction for [one count] is vacated or only its sentence. Either way, the assumption on which the court relied to craft its sentence on [a separate count] no longer holds.").

We need not decide today whether to extend *Miller* to vacated sentences, however, because even if the sentencing package doctrine applied here, there is no indication that Norwood's restitution had any bearing on the rest of his sentence, or vice versa. We have stressed that "the sentencing

17

package doctrine should be confined to cases in which the sentences on the underling counts were *interdependent*." *Miller*, 594 F.3d at 180 (citations omitted) (emphasis in original). Whether two sentences are interdependent turns on whether they "result in an aggregate sentence" as opposed to "sentences which may be treated discretely." *United States v. Murray*, 144 F.3d 270, 273 n.4 (3d Cir. 1998). Thus, we may not simply presume that sentences are interdependent, but must examine the specific sentences at issue to determine whether they are distinct or intertwined.

This interdependence inquiry is most commonly applied to the custodial components of a sentence. In *Miller*, for example, we held that sentences on two counts of conviction that had been grouped together under the Sentencing Guidelines produced an aggregate sentence. *See* 594 F.3d at 180-81. This was so because, under the Guidelines, offenses that are grouped together are treated as having the offense level of the most serious offense. *See* U.S.S.G. § 3D1.3(b). As a result, when one of the underlying convictions was vacated, "the District Court could not rely on a discrete sentence previously imposed for [the remaining] offense," and instead had to "ungroup the two offenses and determine the base offense level applicable" to the remaining offense. *Miller*, 594 F.3d at 181.

Here, the question is whether Norwood's term of imprisonment and restitution order were similarly interdependent such that the sentencing package doctrine should apply. We have not squarely addressed the interdependence of the custodial and non-custodial components of a sentence imposed on a single count. To be sure, there are likely some cases in which a restitution order may be a significant factor in a sentencing court's

18

determination of a custodial sentence. *See* 18 U.S.C. § 3553(a)(7) (listing "the need to provide restitution to any victims of the offense" as one factor to be considered at sentencing"). But this will not always be so, even for components of a sentence imposed for the same count of conviction. In *Davis*, for example, we explained that a fine and restitution imposed for the same count of conviction were not interdependent where "[t]he fine did not have to be added to ensure that the sentence was legally correct." 112 F.3d at 122 n.5. (citing *United States v. DeLeo*, 644 F.2d 300, 302 (3d Cir. 1981)).

Applying *Miller*'s interdependence test here, there is no evidence to suggest that Norwood's custodial sentence on his armed bank robbery charge was in any way intertwined with his restitution order. In his original 1997 sentencing hearing, the Court based its decision to sentence Norwood to 300 months' imprisonment for armed bank robbery primarily on the violent nature of his crimes and the low likelihood of rehabilitation. The Court did not suggest that Norwood's restitution obligations factored into the calculation of his custodial sentence in any way.[7] Likewise, when the District Court resentenced Norwood in 2013 and reduced his term of imprisonment on the armed bank robbery count, it again based its decision primarily on the seriousness of Norwood's crimes,

---

[7] The same is true of Norwood's 1999 resentencing hearing, which the Court expressly "limited solely to the term of imprisonment to be imposed on" the firearm possession count and left Norwood's restitution undisturbed. *See Norwood v. United States*, No. 99-18 at *22-23 (D.N.J. June 29, 1999).

19

his recidivism, and his rehabilitation to date. The Court made no mention of restitution except to say that it would remain undisturbed. On this record, then, we cannot say that Norwood's prison sentence and restitution were so interdependent as to require *de novo* resentencing, nor can we say that that District Court ever purported to treat the two as part of the same sentencing package.

But even if *de novo* resentencing had been appropriate with respect to Norwood's restitution order, this does not mean that every component of Norwood's sentence was necessarily voided and replaced. *De novo* resentencing is not automatic *vacatur*. Rather, as we explained in *Miller*, *de novo* resentencing simply means that "issues concerning the first sentence that were previously waived *may* be raised in the first instance if warranted by the second sentence" if those sentences are interdependent, not that the court *must* do so. *See* 594 F.3d at 179. And the record here is clear that, even if the District Court had discretion to consider Norwood's restitution order at resentencing, it did not do so.

The Government disagrees and contends not only that Norwood's 2013 resentencing must have been *de novo*, but also that we must treat that resentencing as voiding Norwood's original restitution order. The Government raises two arguments on this front, neither of which we find persuasive.

First, the Government argues that every *de novo* resentencing, by definition, "wipe[s] the slate clean." Gov. Br. 25. The Government pulls this language from the Supreme Court's decision in *Pepper v. United States*, 562 U.S. 476, 507 (2011). But *Pepper* does not stand for the proposition that every *de novo* resentencing necessarily vacates each component of an earlier sentence. Rather, it stands for the

20

proposition that when a court engages in *de novo* resentencing, it is not bound by its prior determinations. *Pepper* involved a defendant who had been sentenced twice to 24 months' imprisonment on methamphetamine charges; both times, the sentencing court had applied a 40% downward variance on the sentence based on the defendant providing substantial assistance to the Government. *See id.* at 481-84; U.S.S.G. § 5K1.1. When Pepper was resentenced *de novo* for a third time the court only applied a 20% downward variance for his assistance, which Pepper challenged as violating the law-of-the-case doctrine. *See Pepper,* 562 U.S. at 485-87. The Supreme Court rejected this argument, holding that even if "the original sentencing court's decision to impose a 40-percent departure was at one point law of the case," a *de novo* resentencing "effectively wiped the slate clean" with respect to that prior decision. *Id.* at 507. In other words, *Pepper* stands only for the noncontroversial point that *de novo* review requires courts to consider all legal issues anew.

Second, the Government focuses on the fact that Norwood appealed the 2013 amended judgment—including his restitution order—and that we heard that appeal. This is significant, the Government argues, because, under Federal Rule of Appellate Procedure 4(b)(1)(A)(1), a criminal defendant may only file a notice of appeal within fourteen days of the entry of the judgment to be challenged, so we could not have exercised appellate jurisdiction over Norwood's restitution challenge unless his 2013 resentencing had produced a new restitution judgment.

That argument, however, misses a critical point: Rule 4(b) is not jurisdictional. *See Virgin Islands v. Martinez*, 620 F.3d 321, 328 (3d Cir. 2010). Rather, it is a claim-processing rule that we may consider only "[u]pon proper invocation of

21

the rule" by the opposing party.[8] *Id.* at 328-29. Our jurisdiction over appeals from a criminal sentence is in fact governed by 28 U.S.C. § 1291 (appeals from final judgments of District Courts) and 18 U.S.C. § 3742 (appeals from criminal sentences), at least where those two are not in conflict. *See United States v. Rodriguez*, 855 F.3d 526, 530-33 (3d Cir. 2017). Here they are not.

The District Court's sentence was clearly a final judgment, meaning § 1291 is satisfied, and all that § 3742 requires is that a defendant challenge a sentence on the grounds that it (1) violated the law, (2) improperly applied the sentencing guidelines; (3) exceeded the guideline range; or (4) was plainly unreasonable. *See* 18 U.S.C. § 3742(a). Norwood appealed his restitution order on the ground that it was an abuse of discretion to not consider his ability to pay, which clearly satisfies § 3742. Neither § 1291 nor § 3742 includes any time limit. Accordingly, our exercise of jurisdiction over Norwood's restitution challenge would have been proper even if Norwood were challenging his original 1997 restitution order.

We decline to construe our 2013 order as disturbing Norwood's restitution order for a second, independent reason, which is that we had no jurisdiction to do so. Norwood's 2012 sentence was the result of a habeas petition filed by Norwood under 28 U.S.C. § 2555 challenging his sentence on Double Jeopardy grounds. *See Norwood v. United States*, 1:10-cv-

---

[8] Here, as in *Martinez*, the Government never raised Rule 4(b) in its appellate brief, despite raising other arguments as to Norwood's restitution claims. *See* Brief of Appellees, *United States v. Norwood*, 2013 WL 6837466 at *41-45 (3d Cir. Dec. 19, 2013).

22

6744 (D.N.J. Dec. 23, 2010). This is significant because, as Amicus points out, § 2255 petitions are limited to attacks on custodial sentences. We have consistently held that challenges to restitution and other monetary penalties are not cognizable under the federal habeas statutes. *See United States v. Ross*, 801 F.3d 374, 380 (3d Cir. 2015) ("[T]he monetary component of a sentence is not capable of satisfying the 'in custody' requirement of federal habeas statutes.") (citation omitted); *Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003) (per curiam) ("The payment of restitution or a fine, absent more, is not the sort of 'significant restraint on liberty' contemplated in the 'custody' requirement of the federal habeas corpus statutes.").

We note, however, that most of the cases cited by Amicus involved petitioners who were not in custody at all at the time of their habeas petitions, either because their terms of imprisonment had concluded or because they had never been imprisoned at all. In those cases, the question of the availability of habeas relief was simple—no custody, no jurisdiction. Here, though, Norwood *was* in custody when he filed his 2012 habeas petition, and he successfully challenged his confinement. The question, then, is whether a federal court may provide relief on an otherwise noncognizable restitution claim once it has been joined with a cognizable challenge to a custodial component of a defendant's sentence. Today, we hold that the answer is no.

In reaching this conclusion, we are guided by the text of the federal habeas statutes, which not only limit *who* may bring a habeas petition by requiring that a prisoner be "in custody" to bring a habeas petition, but also limit the type of *relief* that may be sought by requiring that a petition be brought by a petitioner "claiming *the right to be released*." 28 U.S.C.

23

§ 2255(a) (emphasis added). Because amending or setting aside a restitution order does not constitute any form of "release," the federal habeas statutes simply do not provide for that form of relief.

This remains true even if a defendant may properly bring a habeas challenge to a custodial component of their sentence. As several of our sister circuits have correctly held, the federal habeas statutes provide no basis for treating a restitution challenge brought by a confined person any differently from one brought by a person not in custody. *See Kaminski v. United States*, 339 F.3d 84, 88-89 (2d Cir. 2003); *Smullen v. United States*, 94 F.3d 20, 26 (1st Cir. 1996); *United States v. Segler*, 37 F.3d 1131, 1136-37 (5th Cir. 1994).

Moreover, as several Courts of Appeals have observed, entertaining challenges to restitution orders as part of habeas petitions would allow defendants to circumvent the clear limits of the federal habeas statutes and invite meritless challenges to custody simply to bring restitution challenges in through the back door. *See United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999); *Barnickel v. U.S.*, 113 F.3d 704, 706 (7th Cir. 1997); *Smullen*, 94 F.3d at 25-26. Accordingly, when the District Court resentenced Norwood in 2012, it lacked jurisdiction to amend or set aside his restitution order. Likewise, when Norwood appealed the 2012 sentencing order, we reviewed the issues raised in his § 2255 petition *de novo*, meaning we also lacked jurisdiction to disturb his restitution order. We therefore read our 2013 Order as having been limited to the custodial components of Norwood's sentence.

In sum, neither we nor the District Court had jurisdiction to disturb Norwood's restitution order pursuant to a § 2255 petition, and even if we did, there is no evidence in

24

the record either that Norwood's restitution order and prison sentence were so interdependent as to make *de novo* review of his restitution order appropriate or that the District Court ever purported to disturb Norwood's restitution obligations. Norwood's original 1997 restitution order was therefore not disturbed by his 2013 resentencing and has remained in effect through May 30, 2017.

### b) A New Restitution Order Would Not Have Reset Norwood's Restitution Lien or Liability Period

The Government places great emphasis on its argument that Norwood's 2013 resentencing resulted in a new restitution order. But as discussed above, what matters in this case is not Norwood's underlying restitution order, but rather the lien that the Government seeks to enforce.

Under the VWPA, a court may impose a restitution order when sentencing a defendant for certain crimes. *See* 18 U.S.C. § 3663(a)(1) (1994). But that restitution order cannot be enforced directly; instead, the VWPA provides that restitution orders may be enforced by the United States "in the manner provided for the collection and payment of fines" in §§ 3612 and 3613. *Id.* § 3663(h)(1). Under those provisions, a restitution order is treated as a fine, which by operation of law instantly creates "a lien in favor of the United States upon all property belonging to the person fined" which "arises at the time of the entry of the judgment." *Id.* § 3613(a). That lien "becomes unenforceable and liability to pay a fine expires . . . twenty years after the entry of the judgment." *Id.* § 3613(b). The most natural reading of these provisions is that the judgment that created the lien—here, Norwood's original 1997

25

judgment—is the same one from which the twenty-year liability period runs.

The Government, however, challenges this reading and argues instead that the VWPA's twenty-year liability period resets any time a restitution order is amended or re-entered. For this to be the case, one of two things must be true: either (1) the term "entry of the judgment" as used in § 3613(a) to refer to when a lien arises must mean something different than the term "entry of the judgment" as used in § 3613(b) to refer to when the liability period begins to run; or (2) the imposition of a new or amended judgment must automatically void a defendant's lien and replace it with a new one. But neither bears out.

First, there is no reason to read the term "entry of the judgment" as referring to two different judgments simultaneously. It is a "standard principle of statutory construction . . . that identical words and phrases within the same statute should normally be given the same meaning." *G.L. v. Ligonier Valley Sch. Dist. Auth*., 802 F.3d 601, 617 (3d Cir. 2015) (quoting *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007)). In addition, the use of the term "*the* judgment"—as opposed to "*a* judgment" or "*any* judgment"—strongly implies that § 3613 refers to a single judgment.

Second, nothing in the VWPA's text compels the conclusion that imposing a new restitution order automatically replaces a restitution lien. Section 3613(a) provides that a lien "continues until the liability is satisfied, remitted, or set aside, or until it becomes unenforceable pursuant to the provisions of subsection (b)." These are the only ways to terminate a lien under the VWPA, and none occurred here. Norwood's lien

26

was never satisfied, nor had it become unenforceable at the time of resentencing in 2013, and the "remitted" language in § 3613(a) appears inapplicable to liens created by restitution orders because courts lack statutory authority to remit a restitution order.[9] *See United States v. Roper*, 462 F.3d 336, 340 (4th Cir. 2006). That leaves only the possibility that Norwood's restitution order was somehow "set aside" by the 2013 resentencing. But for the reasons discussed above, there is no indication that the lien against Norwood—which, at least with respect to the individual victims owed restitution, is a constitutionally-protected property interest, *see, e.g.*, *United States v. Perry*, 360 F.3d 519, 525-26 (6th Cir. 2004)—was "set aside" or otherwise disturbed by the resentencing court.

More importantly, the VWPA's text and our precedent make clear that the VWPA's twenty-year liability period runs from the date of the original restitution order, even if that order is later vacated. Section 3612—which, like § 3613, is incorporated by the VWPA[10]—provides for, *inter alia*, the

---

[9] It is not surprising that some parts of § 3613 are inapplicable to restitution liens because § 3613 provides a general mechanism for the enforcement of fines, which the VWPA simply borrows.

[10] Specifically, § 3663(h)(1)(a) of the VWPA provides that restitution may be enforced "in the manner provided for the *collection* and *payment* of fines in subchapter B of chapter 229 of this title." (emphasis added). While § 3613 refers to the "satisfaction"—that is, payment—of fines, § 3612 refers to the "collection" of fines and restitution. Indeed, an earlier version of § 3663(h) sought to refer to §§ 3612 and 3613

calculation of interest on fines and restitution. Specifically, § 3612(f) provides that "[t]he defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine is paid in full before the fifteenth day *after the date of the judgment*" and that "[i]nterest on a fine shall be computed . . . from the first day on which the defendant is liable for interest." 18 U.S.C. § 3612(f) (1994) (emphasis added). Thus, § 3612(f), like § 3613, explicitly ties the running of the interest clock to the entry of the judgment.

The VWPA's interest-accrual provision is nearly identical to the one found in the general post-judgment interest statute, which provides that "interest shall be calculated from the date of the *entry of the judgment*." 28 U.S.C. § 1961(a) (emphasis added). In *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88 (3d Cir. 1993), we held that vacating and re-entering a judgment did not reset the interest clock because what mattered for purposes of calculating post-judgment interest was when "liability and damages, as finally determined, were ascertained and established." *Id.* at 98. So long as that basis for liability is "never upset" by subsequent judgments, we explained, interest must run from the original date. *Id.*

Applying that same reasoning here—and we should, given the textual similarities between § 1961 and § 3612(f)— it is clear that the basis for Norwood's restitutionary liability was established in his original 1997 judgment and that it was never disturbed. First, the basis for Norwood's liability is his conviction for armed bank robbery, which has never been

explicitly, though there appears to have been a scrivener's error. *See Ridgeway*, 489 at 737 n.9.

28

altered. Second, the amount of Norwood's restitution has never been modified in any way.[11] Third, at every stage of the litigation, the sentencing courts were clear that Norwood's restitutionary obligations remained in place and were undisturbed. All of this suggests that, under *Loughman*, interest on Norwood's restitution began running from his original 1997 judgment.[12] And because a lien under § 3613(a), like interest under § 3612(f), is tied to the same "judgment," it follows that Norwood's lien would also remain undisturbed and that the liability period under § 3613(b) also began running

---

[11] It is not clear that this would even be relevant under *Loughman*. There, the amount of damages was repeatedly challenged and modified in subsequent amended judgments, but we were clear that all that mattered was the original "basis for liability." *See Loughman*, 6 F.3d at 98-99.

[12] Amicus makes a similar argument by analogy to Federal Rule of Civil Procedure 60, which requires that requests for relief from a judgment be made within one year from the judgment challenged. *See* Fed. R. Civ. P. 60(b)-(c). While we have not addressed the applicability of *Loughman*'s reasoning to a Rule 60 motion precedentially, the Eighth Circuit in *Jones v. Swanson* applied similar logic to hold that whether an amended judgment reset Rule 60's one-year clock turned on whether the matter at issue was resolved by the original judgment and remained "unaffected by the [] decision amending the judgment." 512 F.3d 1045, 1049 (8th Cir. 2008). Though we need not decide today whether *Loughman*'s reasoning applies to a Rule 60 motion, the Eighth Circuit's reasoning persuades us that the more modest extension of *Loughman* to § 3612(f)'s interest provision is sound.

in 1997.  To conclude otherwise would require us to read the term "entry of the judgment" differently throughout the VWPA.  For the reasons discussed above, we see no basis for doing so.

Finally, in light of the dispute over which "judgment" counts for purposes of § 3613, the parties have sparred back and forth over the relevance of the Supreme Court's decision in *Magwood v. Patterson*, 561 U.S. 320 (2010).  *Magwood* interpreted the statutory jurisdictional bar against "second or successive" habeas petitions under 28 U.S.C. §§ 2244 and 2254 in the context of a defendant who had previously brought a successful challenge to his sentence and then sought, after resentencing, to challenge his new sentence on grounds that would have been available at his earlier challenge. *See id.* at 323-27.  The Court, after a thorough analysis of § 2254's text, concluded that where "there is a new judgment intervening between the two habeas petitions, . . . an application challenging the resulting new judgment is not 'second or successive' at all."  *Id.* at 341-42 (citation omitted).   ). *Magwood* was limited to a challenge to a new sentence following an intervening resentencing and left open the question of whether a challenge to an underlying and undisturbed conviction also would not be "second or successive" following resentencing. *See id.* 342.

We answered that question in the affirmative in *Lesko v. Secretary Pennsylvania Department of Corrections,* 34 F.4th 211  (3d Cir. 2022), where we confirmed, as we anticipated in *Romansky*, that in a sentencing package context, *i.e.,* where a court "'undertake[s] a *de novo* resentencing as to all counts of conviction if any count is vacated on appeal,'" the resentencing then "'constitute[s] a new judgment as to every count of conviction,'" *id.* at 225 (quoting *Romansky v. Superintendent*

30

*Greene SCI*, 933 F.3d 293, 300 (3rd Cir. 2019)).  We held, in other words, that "[r]esentencing creates a new judgment [for purposes of § 2254] as to each count of conviction for which a new or altered sentence is imposed, while leaving undisturbed the judgments for any counts of conviction for which neither the sentence nor the conviction is changed."  *Id*. at 224.

Both *Magwood* and *Lesko*, however, are inapposite here.  First, both opinions interpreted the term "judgment" in the habeas context, which is not implicated here.[13]  Second, both *Magwood* and *Lesko* turned on the existence of an intervening judgment, but as we explained in *Loughman*, whether or not there is an intervening judgment does not necessarily change when interest or liability begins to run.  Thus, even if, under *Magwood* and *Lesko*, Norwood's resentencing produced a new "judgment," that would not change the fact that his interest and liability both run from the original 1997 judgment.

In sum, whether Norwood's 2013 resentencing resulted in a new restitution order is immaterial.  It is his lien, not his restitution order, that the Government seeks to enforce.  Under the VWPA, both the twenty-year liability window and the accrual of interest are tied to the same event—"the entry of the judgment"—which, under *Loughman*, is the original 1997 judgment that established the basis of Norwood's restitutionary liability.  It is thus clear from the VWPA's text and our precedent that the VWPA's twenty-year liability period began

---

[13]  We were clear in *Lesko* that our holding should not be construed as extending to uses of the term "judgment" in other statutes.  *Lesko*, 34 F.4th at 225 n.7.

31

to run from the date of Norwood's original 1997 judgment such that it expired and became unenforceable on May 30, 2017.

> ### c) Imposing a Second Period of Restitutionary Liability for the Same Conduct Would Raise Double Jeopardy Concerns

We are also guided in our decision to reject the Government's reading of the VWPA by the canon of constitutional avoidance. We have long held that "courts are 'obligated to construe [a] statute to avoid [serious constitutional] problems" if such a saving construction is fairly possible. *Castro v. U.S. Dep't Homeland Sec.*, 835 F.3d 422, 435 (3d Cir. 2016) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 299-300 (2001)). And here, imposing a new twenty-year liability period on Norwood would raise serious concerns under the Double Jeopardy Clause. U.S. Const. amend. V, cl. 2.

When Norwood was convicted in 1997, he was sentenced to pay a set amount of restitution with a fixed period of liability, during which a maximum of twenty years of interest could accrue. The Government argues that Norwood's 2013 resentencing effectively wiped out his original liability period and replaced it with a fresh twenty-year period, with no credit given for the seventeen years he had already spent subject to liability.

But imposing the same penalty twice for a single offense without giving credit for the portion of a sentence already satisfied is the very definition of a Double Jeopardy violation. The Supreme Court has long held that the Double Jeopardy Clause "absolutely requires that punishment already

32

exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 718-19 (1969). This means that when a defendant is resentenced to a term of imprisonment, "the second sentence must be reduced by the time served under the first." *Id.* at 719. That is why, for example, it would violate the Double Jeopardy Clause to resentence Norwood to a term of imprisonment without crediting him for the seventeen years he had already spent incarcerated before his 2013 resentencing, or to impose a new restitution order without crediting Norwood for the amount of money he had already paid towards his restitution obligation.[14] But that reasoning appears to apply just as well to the duration of restitutionary liability imposed on Norwood.

First, as we discuss in greater detail below, being subject to restitutionary liability is a form of punishment. We have recognized that restitution, like a term of imprisonment, is a criminal penalty. *See United States v. Leahy*, 438 F.3d 328, 335 (3d Cir. 2006) (en banc) ("[R]estitution ordered as part of a criminal sentence is criminal rather than civil in nature."); *United States v. Palma*, 760 F.2d 475, 479 (3d Cir. 1985) (orders of restitution under the VWPA are criminal penalties); *United States v. Edwards*, 162 F.3d 87, 91 (3d Cir. 1998) (orders of restitution under the MVRA are criminal penalties). A liability period is an integral and inextricable part of that punishment; under the VWPA, once the liability period ends, a defendant's restitution obligation expires, leaving only an unenforceable dollar amount. In this way, the VWPA's period

_____

[14] As of the Government's motion to collect on Norwood's inmate account on June 23, 2016, Norwood had paid off $2,228.87 of his restitution.

33

of liability is analogous to a term of imprisonment or supervised release; it is a specific period of time, fixed by law, during which a convicted person's rights are adjusted as part of a criminal penalty. Increasing that period beyond what "the legislature intended" implicates the Double Jeopardy Clause. *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

Second, increasing the liability period will almost always increase the total amount of restitution that can be collected from a defendant. As we noted in our 2020 order remanding this case on the ex post facto issue, "increase[ing] the *duration* of [Norwood's] liability" would "as a practical matter . . . increase the amount that he ultimately must pay." App. 252-53 n.1. Increasing Norwood's liability period would also increase the total amount of interest owed beyond the twenty years set by the VWPA, as under *Loughman* his interest accrues from the entry of his original 1997 judgment.

Third, extending Norwood's liability period without crediting him for the seventeen years spent subject to liability is at odds with the principles that animate our Double Jeopardy jurisprudence. Doing so would frustrate his legitimate expectation that the time he had already spent subject to liability was behind him. A defendant may not have a legitimate expectation in the finality of his sentence where the law explicitly provides for the possibility that a sentence may be later increased, *see United States v. DiFrancesco*, 449 U.S. 117, 137 (1980), but a defendant *does* have a legitimate expectation of finality with respect to the portion of a sentence already satisfied, *see Pearce*, 395 U.S. at 718-19. Moreover, as we noted in *United States v. DeLeo*, the fairness component of the Double Jeopardy Clause is also concerned with whether "a defendant may be deterred from calling the court's attention to an error for fear of subjecting himself to greater

34

punishment." 644 F.2d at 302. This is exactly the case here—the Government violated Norwood's rights under *Booker*, and Norwood should not have to accept a second period of liability as a condition of vindicating his constitutional rights.

The risks of a Double Jeopardy violation under the Government's interpretation of the VWPA are grave and thus wisely avoided by the reading we adopt today. *Cf. Castro*, 835 F.3d at 435.

### 3. The Government's Collection Efforts Did Not Prevent Norwood's Lien from Becoming Unenforceable

Having explained why the VWPA's twenty-year liability period runs from the date of the original judgment that gave rise to a restitution order unless the basis for restitution liability is later disturbed, we turn to the next question: whether the Government may nonetheless enforce an expired restitution order by commencing collection before the liability period ends.

This issue touches on the subtle yet important distinction between two types of statutory periods: durational periods and limitations periods. In *United States v. Davis*, 52 F.3d 781 (8th Cir. 1995), the Eighth Circuit neatly summed up the difference in the context of another tax lien statute, 26 U.S.C. § 6324(a)(1): "If the period is durational, the government has ten years to enforce the lien before it expires. If the period is limitational, the government has ten years to file its complaint." *Id*. at 781. Thus, we must determine whether the VWPA's twenty-year liability period defines the *duration* of Norwood's lien—in which case, it was rendered unenforceable on May 30, 2017—or whether it merely *limits*

when the Government may commence enforcement—in which case, the Government's timely enforcement action would allow for collection to continue even after the twenty-year period lapsed. We first consider the reasoning put forth by the District Court before turning to the Government's new arguments attempting to cast the VWPA's liability period as limitational.

### a)    The District Court's Reasoning

The District Court based its decision on 18 U.S.C. § 3613(c), which provides that a lien created by a restitution order operates "as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986." App. 6. The Court thus looked to the relevant portion of the tax code, 26 U.S.C. § 6502(a), which provides that "[i]f a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy *shall be extended and shall not expire until the liability for the tax (or judgment against the taxpayer arising from such liability) is satisfied or becomes unenforceable*." App. 6-7 (emphasis in original). Based on this language, the District Court concluded that, because the Government's motion to collect on Norwood's lien was filed before the lien expired, "the United States [was] entitled to seek foreclosure of its lien." App. 7 (quoting *United States v. Pegg*, No. 16-60289-CIV, 2016 WL 5234616, at *2 (S.D. Fla. Sept. 22, 2016)).

There are two reasons why this analysis is mistaken, as even the Government concedes on appeal. First, despite the fact that this case was remanded on an ex post facto challenge based on the potentially impermissible retroactive application of the MVRA, the District Court cited the MVRA version of

36

§ 3613. The VWPA version of § 3613—which was in effect at the time of Norwood's crimes—did not provide for enforcement of restitution orders via the mechanism for enforcing tax liens. *Compare* 18 U.S.C. § 3613(a) (1994) *with* 18 U.S.C. § 3613(c) (2000). The MVRA amended § 3613 to provide for additional enforcement mechanisms, including § 6502(a). But that mechanism would not have been available to the Government under the VWPA version of § 3613(b), which enumerated specific circumstances under which the VWPA's liability period could be extended or suspended: (1) "by a written agreement between the person fined and the Attorney General;" and (2) "during any interval for which the running of the period of limitations for collection of a tax would be suspended pursuant to" certain specific provisions of the tax code, none of which included the tax code provision relied upon by the District Court.[15] 18 U.S.C. § 3613(b) (1994). By applying the MVRA version of § 3613 retroactively to Norwood's restitution obligation, the District

---

[15] The VWPA version of § 3613 incorporates "6503(b), 6503(c), 6503(f), 6503(i), or 7508(a)(1)(I) of the Internal Revenue Code of 1986 (26 U.S.C. 6503(b), 6503(c), 6503(f), 6503(i), [] 7508(a)(1)(I)), [and] section 513 of the Act of October 17, 1940, 54 Stat. 1190." 18 U.S.C. § 3613(b) (1994). These provisions relate to periods during which assets are in "control or custody" of a court (26 U.S.C. § 6503(b)), the taxpayer is outside the United States (§ 6503(c)), assets of third parties have been wrongfully seized (§ 6503(f)), liability for PFIC earning taxes has been suspended (§ 6503(i)), or the taxpayer is serving in the armed forces (§ 7508(a)(1)(A)). The reference to the Act of October 17, 1940, relates to taxes on sugar. None have anything to do with collection actions.

Court thus increased his criminal punishment and merely replaced one ex post facto problem with another.

Second, even if 26 U.S.C. § 6502(a) did apply to Norwood's restitution obligations under the VWPA, the Government still would have been unable to collect after the liability period expired. Section 6502(a) provides that a timely collection proceeding will extend "the period during which such tax may be collected" until the tax "is satisfied or becomes unenforceable." The District Court read this language to mean that the Government's motion to collect on Norwood's lien prevented his liability from expiring. The flaw in that logic is that § 6502 explicitly provides that, even if the Government tolls a lien by commencing a collection action, that lien will still expire when "the liability for the tax . . . becomes unenforceable," 26 U.S.C. § 6502(a), and the VWPA version of § 3613(b) provides that a restitution lien "becomes unenforceable" after twenty years. In short, even under § 6502(a) the Government would not be able to collect.[16]

---

[16] The District Court cited a district court case out of Florida, in which the court held that the Government's filing of a collection action eight days before the twenty-year liability period expired prevented the lien from expiring and allows the Government to proceed. *See United States v. Pegg*, No. 16-60289-CIV, 2016 WL 5234616, at *2 (S.D. Fla. Sept. 22, 2016). The *Pegg* court did not address the VWPA's unenforceability provision because it was interpreting the MVRA version of § 3613, which *never* renders a lien "unenforceable," but simply describes when a defendants' liability terminates. *See* 18 U.S.C. § 3613(b).

### b) The Government's New Arguments

Recognizing the District Court's error in relying upon § 6502(a), the Government offers up alternative reasons for why commencing its collection effort before the end of Norwood's twenty-year liability period prevented his restitution lien from becoming unenforceable. None is persuasive.

The Government begins by pointing to *Dolan v. United States*, in which the Supreme Court interpreted a provision of the MVRA requiring a sentencing court to "set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 560 U.S. 605, 613 (2010) (quoting 18 U.S.C. § 3664(d)(5)). In *Dolan*, the sentencing court attempted to hold a restitution hearing after the 90-day period had lapsed, and the defendant argued that the MVRA no longer authorized the court to impose restitution. *See id.* at 609. The Supreme Court disagreed, however, and held that the MVRA did not prevent a court from imposing restitution after 90 days—in other words, that the statutory period did "not deprive a judge . . . of the power to take action to which the deadline applies if the deadline is missed." *Id.* at 611.

The Government reads *Dolan* as standing for the broad proposition that a missed statutory deadline will not prevent the Government from acting with respect to restitution. But that reading is mistaken. The *Dolan* Court was clear that many, if not most, statutory deadlines do in fact carry with them consequences that limit or strip the Government of its ability to act once a deadline has passed, *see id.* at 610-11, and that the MVRA's 90-day deadline was an exception to this general rule. It reached that conclusion based on distinct textual

39

features of the MVRA deadline. For example, while statutes like the Speedy Trial Act, 18 U.S.C. § 3161(c)(1), require dismissal of an indictment for a missed deadline, the MVRA deadline did not "specify a consequence for noncompliance" with the 90-day period. *Dolan*, 560 U.S. at 611 (citation omitted). To the contrary, another MVRA provision permitted victims to petition for an amended restitution order even after the deadline had passed. *See id.* at 613.

Such features, however, are conspicuously absent from the VWPA, which instead imposes an explicit and severe consequence: that "[a] lien becomes *unenforceable*" after the twenty-year deadline passes. 18 U.S.C. § 3613(b) (1994) (emphasis added). That unenforceability provision, combined with the separate provision governing the expiration of a defendant's obligation to pay, makes clear that when the Government fails to complete its collection effort within twenty years, it may no longer enforce its lien. If any doubt remained, the VWPA enumerates specific circumstances under which its liability period may be extended or suspended, and an enforcement action by the Government is not among them. *See id.* In short, *Dolan* is inapposite here.

The Government next analogizes to caselaw in the probation and supervised release context, pointing out that where a defendant commits a violation so close to the end of their supervision that it would be impracticable for the Government to hold a revocation hearing before the period expires courts have allowed for revocation hearings to be held after the expiration date so long as sufficient process was issued before that date.

From this, the Government urges a general principle that it may enforce the laws so long as it moves to do so before

40

the end of a statutory period.  But we are not trading in general principles; we are interpreting a statute, and in each of the cases cited by the Government, the relevant statute implicitly, if not explicitly, authorized revocation hearings after the relevant expiration date.  *See, e.g.*, *United States v. Barton*, 26 F.3d 490, 491 (4th Cir. 1994) (holding that 18 U.S.C. § 3583(e)(3) permitted courts to hold revocation hearings after the release period ended based on an explicit reference to the Federal Rules of Criminal Procedure, which included a "reasonable time" standard for holding revocation hearings); *United States v. Neville*, 985 F.2d 992, 995 (9th Cir. 1993) (same); *United States v. Bazzano*, 712 F.2d 826, 835 (3d Cir. 1983) (en banc) (holding that 18 U.S.C. § 3653, by providing that probation revocation hearings would occur "[a]s speedily as possible after arrest," impliedly allowed for hearings outside of the statute's five-year period); *Franklin v. Fenton*, 642 F.2d 760, 763 (3d Cir. 1980) (holding that 18 U.S.C. § 4213(b) "implicitly approved" of deferring a warrant for revocation of parole until after the parole period expired when it provided that "a warrant may be suspended pending disposition of a charge").

The VWPA, on the other hand, could not be more explicit that no further action is authorized after its liability period expires: the lien becomes "unenforceable." 18 U.S.C. § 3613(b) (1994).  This language makes clear that the VWPA's liability window is not a limitations period that exists simply to encourage the Government to act promptly—rather, it is a durational period that furthers the important interest of finality by demarcating a clear end to the defendant's liability after twenty years, whether or not the Government has commenced collection.

41

Finally, in a last-ditch policy argument, the Government contends that construing the VWPA's twenty-year liability period to make it harder for the Government to collect on restitution liens frustrates the important goal of providing restitution to victims of crime. That, however, is an argument for passing the MVRA, not for judicially amending the VWPA's clear text.

### B. Applying the MVRA to Extend Norwood's Liability Period Would Violate the Ex Post Facto Clause

Having determined that the VWPA cannot be construed to permit the Government to enforce Norwood's restitution obligation, we must now decide whether application of the MVRA to extend Norwood's liability period violates the Ex Post Facto Clause.

### 1. The MVRA Is a Penal Statute Being Applied Retroactively to Norwood

To establish an Ex Post Facto Clause violation, Norwood must show that (1) "there was a change in the law or policy that has been given retrospective effect," and (2) the law "disadvantaged" him by either altering the definition of criminal conduct or increasing the punishment for the crime. *Newman v. Beard*, 617 F.3d 775, 784 (3d Cir. 2010) (citation omitted). A law applies retroactively where it "attaches legal consequence to a crime committed before the law took effect." *Weaver v. Graham*, 450 U.S. 24, 31 (1981).

Here, there is no question that application of the MVRA would give it retroactive effect. Congress enacted the MVRA on April 24, 1996, twelve days after Norwood committed his

42

crimes. *See Edwards*, 162 F.3d at 88-89 (holding that the MVRA was applied retroactively to a defendant who was sentences after the MVRA's passage but whose crimes occurred before the MVRA was enacted). But would its application disadvantage Norwood by increasing the punishment for his crime? To answer this question, we first lay out the relevant background principles, and then consider the retroactive effect of applying the MVRA's liability period to two aspects of Norwood's restitution obligation: the amount of restitution owed, and the duration of his liability.

## 2. General Ex Post Facto Principles

The Ex Post Facto Clause provides that "[n]o . . . ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3. This Clause, which "the Framers ranked [] among the Constitution's most fundamental guarantees," *Holmes v. Christie*, 14 F.4th 250, 258 (3d. Cir. 2021), furthers vital liberty interests in several ways. It constrains legislatures by prohibiting them from "enacting arbitrary and vindictive" laws targeting disfavored groups, *id.* (quoting *Miller v. Florida*, 482 U.S. 423, 429-30 (1987), *abrogated on other grounds by Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 506-07 n.3 (1995)), and by "confining [them] to penal decisions with prospective effect," and "leaves the application of existing penal law" to the judicial and executive branches, *id.* (quoting *Weaver*, 450 U.S. at 29 n.10). It also ensures that individuals have "fair warning" as to the penal consequences of particular conduct, *Weaver*, 450 U.S. at 28, and that defendants "know the range of punishments" that are possible "during the adjudication of their case, so that they can plea bargain and strategize effectively." *Mickens-Thomas v. Vaughn*, 321 F.3d 374, 391-92 (3d Cir. 2003).

43

The essence of an Ex Post Facto Clause violation is that a law "increase[s] the punishment" for a crime after the fact. *Garner v. Jones*, 529 U.S. 244, 249 (2000). Since the Founding, the nature of criminal punishment has evolved; so, too, has our understanding of the Ex Post Facto Clause. At the Founding, for example, "long prison sentences were unusual, and parole was almost unknown." *Holmes*, 14 F.4th at 258. But as parole and other forms of supervised release became widespread, we recognized that the Ex Post Facto Clause necessarily applies to laws that affect the availability of early release and thus carry a "'significant' risk of increasing a [defendant's] time behind bars." *Id.* (quoting *Morales*, 514 U.S. at 508). Likewise, courts have responded to the prolific rise of criminal restitution by extending the Ex Post Facto Clause's guarantee. Both we and the Supreme Court have long recognized that restitution, including under the MVRA and the VWPA, is a criminal penalty. *See Pasquantino v. United States*, 544 U.S. 349, 365 (2005); *Leahy*, 438 F.3d at 335; *Palma*, 760 F.2d at 479; *Edwards*, 162 F.3d at 91.

To decide if a change in law will increase the punishment for a crime, certainty is not required; rather, a defendant must show only that the legal change creates "a significant risk of increasing the measure of punishment attached to the covered crimes." *Garner*, 529 U.S. at 250 (citation omitted). We do not take a formalistic approach to this inquiry; rather, "a challenged rule's constitutionality hinges on its effect, not its form." *Holmes*, 14 F.4th at 264. For this same reason, we do not draw distinctions between substantive or procedural rules; we look only to the effect of a rule on a given punishment. *See id.* at 264-65. We also do not require that a law alter the sentence as written; it is enough if a change in the law poses a significant risk of increasing the

44

*portion* of a sentence that a defendant will actually be made to satisfy. *See Garner*, 529 U.S. at 251, 255.

Our caselaw in the ex post facto context identified two other principles that are relevant here. In *Mickens-Thomas*, we considered a 1996 amendment to Pennsylvania's Parole Act that changed the substantive criteria for considering parole applications by increasing the weight assigned to public safety concerns. *See* 321 F.3d 377-78, 385-86. We held that this amendment violated the Ex Post Facto Clause as applied because, even though there had been no change in the petitioner's formal term of imprisonment, the added emphasis on public safety hurt his chances of obtaining release and thus had the practical effect of increasing the portion of his sentence that he would actually serve. *See id.* at 392-93. *Mickens-Thomas* reflects the reality that defendants make strategic decisions based on their understanding of the availability of future parole, and that a prisoner is "entitled to know . . . his or her chances of receiving early release." *Id.* at 392.

In *Edwards*, we held that retroactively applying the MVRA's mandatory restitution provision to a defendant who was unable to pay violated the Ex Post Facto Clause because, under the VWPA, courts were required to consider a defendant's ability to pay, meaning that the defendant "would, in all likelihood, not be held accountable for the full amount" but for application of the MVRA. 162 F.3d at 88-89.

With these principles in mind, we consider the consequences of retroactively applying the MVRA to Norwood as to both the amount of his restitution and the duration of his liability.

### 3.      The Amount of Restitution

45

When Norwood committed his crimes in 1996, the VWPA provided notice that the punishment of restitution, though discretionary, was a potential consequence of his conduct. But the VWPA also placed two clear limits on the amount of restitution that a defendant would ultimately have to pay. First, the VWPA's twenty-year liability period, coupled with its interest provision, established a numerical limit on the amount that could be owed: the principal plus a maximum of twenty years of interest. Second, the VWPA's liability period created a durational limit on the amount of funds that could be collected: after twenty years, a restitution lien would become unenforceable and a defendant's future earnings would be exempt from collection going forward. For a defendant like Norwood, who from the start owed more in restitution than he would likely ever be able to pay, this was significant; it meant that he could reasonably expect that the Government would only be able to collect on whatever funds he acquired over the course of twenty years while incarcerated, likely much less than the amount listed in his restitution order.

Under the MVRA, of course, the math is very different. Norwood's lien would accrue interest through his entire term of imprisonment, plus an additional twenty years after that, and the Government would also be able to collect on any future funds Norwood might obtain for decades following his eventual release. In effect, Norwood would almost certainly end up owing a greater total amount and paying a greater portion of that amount than he would under the VWPA.[17]

---

[17] Our dissenting colleague contends that the additional accrual of interest is not a form of punishment because this interest merely reflects the time-value of Norwood's restitution obligation and is necessary to ensure that victims are not short-

46

A change in law that increases the amount of restitution a defendant will ultimately have to pay violates the Ex Post Facto Clause. *See Edwards*, 162 F.3d at 89-92. And a law can also violate the Ex Post Facto Clause by increasing the portion of a sentence that a defendant will ultimately have to satisfy. *See Mickens-Thomas*, 321 F.3d at 392-93. Together, these cases stand for the proposition that a law violates the Ex Post Facto Clause if it increases either a defendant's total restitution obligation or the portion of that obligation they must ultimately pay.

The Government disagrees and would have us look only at the total amount of restitution as printed on Norwood's

---

changed by delayed payment. We agree that one of the purposes of the MVRA's interest provisions is to make victims whole. But the fact that interest, like restitution generally, has compensatory purposes does not "detract from its status as a form of criminal penalty when imposed as an integral part of sentencing." *Edwards*, 162 F.3d at 92. The dissent errs by examining Norwood's interest from the perspective of his victims; for Ex Post Facto purposes, we must adopt the perspective of the defendant and ask whether applying the MVRA's greater interest creates a "significant risk" of increasing his punishment—i.e., the amount of restitution he may be made to pay. *Holmes*, 14 F. 4th at 258. Moreover, when deciding if such a risk exists, we are required to look beyond the form that a rule takes and to focus instead on its effect. *See id.* at 264. Here, regardless of the label attached to the increase in Norwood's restitution obligation—"interest" or a "penalty"—the effect from Norwood's perspective is the same: he must pay more under the MVRA than under the VWPA.

47

judgment, with no mind to interest, future collections, or the practical effects that applying the MVRA would have. The cases on which it relies, however, do not convince us.

First, the Government points to courts which have held that retroactive application the MVRA's liability period does not violate the Ex Post Facto Clause because they have likened the liability period to a statute of limitations. *See United States v. Blackwell*, 852 F.3d 1164, 1166 (9th Cir. 2017) (per curiam); *United States v. Glenn*, No. 21-5010, 2021 WL 5873144, at *2 (10th Cir. Dec. 13, 2021); *United States v. Rosello*, 737 F. App'x 907, 909 (11th Cir. 2018); *United States v. Richards*, 472 F. App'x 523, 524-25 (9th Cir. 2012). This is significant because increases to statutes of limitations do not implicate the Ex Post Facto Clause so long as they only apply to unexpired limitations periods. *See Stogner v. California*, 539 U.S. 607, 618 (2003); *United States v. Richardson*, 512 F.2d 105, 106 (3d Cir. 1975).

But the MVRA's liability period is not a statute of limitations. The liability period and a statute of limitations have very different legal effects. A statute of limitations creates a procedural bar to seeking a remedy or prosecuting a crime but does not extinguish a plaintiff's underlying rights or the crime itself, as evidenced by the fact that a statute of limitations is an affirmative defense that can be waived. *See United States v. Oliva*, 46 F.3d 320, 325 (3d Cir. 1995). The MVRA, in contrast, expressly extinguishes a defendant's liability once the liability period has run. *See* 18 U.S.C. § 3613(b).

The MVRA's liability period also serves a different purpose than a statute of limitations. A statute of limitations ensures cases are brought while evidence is still ripe, a purpose

48

already served by the statutes of limitations that apply to Norwood's underlying crimes. *See Stogner*, 539 U.S. at 615. In contrast, the purpose of the MVRA's liability period, like the VWPA's, has nothing to do with evidentiary concerns and aims instead to place a clear temporal limit on a defendant's liability. The cases cited by the Government comparing the MVRA's liability period to a statute of limitations are therefore unhelpful.

Next, the Government argues, based on precedent distinguishing between "procedural" and "substantive" rules, that purely procedural changes in law do not implicate the Ex Post Facto Clause at all. *See, e.g.*, *Blackwell*, 852 F.3d at 1166; *United States v. Phillips*, 303 F.3d 548, 551 (5th Cir. 2002). But both we and the Supreme Court have refused "to define the scope of the [Ex Post Facto] Clause along an axis distinguishing between laws involving 'substantial protections' and those that are merely 'procedural.'" *Holmes*, 14 F.4th at 265 (quoting *Carmell v. Texas*, 529 U.S. 513, 539 (2000)). Instead, we look to whether the rule has the practical effect of increasing a defendant's punishment. *Id.* In any event, the distinction between procedure and substance is immaterial here because the MVRA's enforcement mechanism is not procedural. Like the VWPA, the MVRA creates an enforceable property interest in the form of a lien, which in turn creates corresponding substantive legal rights and obligations.

Finally, the cases cited by the Government fixate on whether the amount of restitution as memorialized in a judgment remains unchanged. *See, e.g.*, *Blackwell*, 852 F.3d at 1166. But that singular focus does not account for interest, which will contribute, under the MVRA, to increase the total amount Norwood will owe. It is also contrary to our case law, which holds that changes to parole criteria can violate the Ex

49

Post Facto Clause even if they leave a formal sentence unaltered so long as their practical effect is to increase the portion of that sentence that a defendant is likely to serve. *See Mickens-Thomas*, 321 F.3d at 392-93. This same logic applies here: a change in law that has the practical effect of increasing either the total amount of a defendant's restitution or the portion of a defendant's restitution that they must ultimately pay violates the Ex Post Facto Clause.

Here, retroactive application of the MVRA would (1) allow the Government to collect on the funds at issue here, which Norwood would otherwise not have to pay; (2) increase the total amount of Norwood's restitution obligation by subjecting him to decades of additional interest; and (3) increase the portion of Norwood's restitution that he must ultimately pay by permitting the Government to seek collection over a greater period of time, including on future income that would otherwise never be subject to collection under the VWPA. Each one of these constitutes a retroactive increase in Norwood's punishment in violation of the Ex Post Facto Clause.

### 4. The Duration of Restitutionary Liability

We recognize, too, that being subject to restitutionary liability is its own form of criminal punishment, independent of the amount a defendant owes, such that extending the duration of a defendant's liability period may itself violate the Ex Post Facto Clause.

While the Government tries to characterize the MVRA's liability period as simply limiting the Government's ability to collect on a restitution order, that argument ignores

50

how the MVRA actually operates. When a defendant is sentenced to pay restitution, the MVRA creates a lien—a property interest—in favor of the Government and imposes on the defendant a punitive legal obligation—i.e., a punishment.[18] That punishment continues until the lien "is satisfied, remitted, set aside, or is terminated" at the end of the liability period. 18 U.S.C. § 3613(c). Thus, any extension of the liability period is a *de facto* increase of a criminal punishment.

The punitive nature of restitutionary liability under the MVRA is also apparent from the collateral consequences that attach to criminal restitutionary liability.[19] Under both the

---

[18] The Government urges us to distinguish between the imposition of restitution, which it concedes is a form of punishment, and enforcement of that restitution. But imposition of restitution is meaningless without enforcement, and both are integral components of a defendant's punishment. Similarly, the Government argues that, while the imposition of restitution may be sufficiently punitive in nature to trigger the Ex Post Facto Clause, the Clause should not apply to the collection of restitution because collection is primarily compensatory in nature. We were clear in *Edwards*, however, that "the compensatory purposes of criminal restitution [do not] detract from its status as a form of criminal penalty when imposed as an integral part of sentencing." 162 F.3d at 92. That is true of both the imposition of restitution and its collection.

[19] The Government protests that we should not consider the existence of collateral consequences imposed by other state and federal statutes because the key issue is whether Congress intended for the MVRA's liability period to be punitive in

51

VWPA and the MVRA, for instance, an unpaid restitution obligation instantly becomes an added condition of parole or supervised release. *See* 18 U.S.C. § 3663(g) (1994); 18 U.S.C. § 3664 (1994). And in many states, having an outstanding criminal restitution liability means being denied the right to vote, *see, e.g.*, Fla. Stat. § 98.0751(2)(a)(5)(a), to serve on a jury, *see, e.g.*, S.D. Codified Laws §§ 23A-27-18, 23A-27-35, or to run for office, *see, e.g.*, N.C. Const. art. VI, § 8, along with suspension of one's driver's license, *see, e.g.*, N.J. Stat. Ann. § 2C:46-2, or the right to own a firearm, *see, e.g.*, Utah Code Ann. §§ 77-40a-303, 76-10-503, 77-18-114; *see also* Cortney E. Lollar, *What Is Criminal Restitution?*, 100 Iowa L. Rev. 93, 98, 129 (2014). In addition, for many who struggle to pay off their restitution obligations, the threat of future incarceration looms. *See id.* at 128 (describing a pattern of judges deeming failures to pay restitution "willful" and sentencing individuals to prison). The Government's answer is that a defendant may

---

nature. But we presume that Congress was aware of the existence of an extensive set of collateral consequence— attaching only to criminal restitutionary liability—when it enacted the MVRA and extended the period of liability for what it understood to be a criminal punishment. Likewise, our dissenting colleague contends that the potential of collateral consequences attaching to Norwood's restitutionary liability is irrelevant because Norwood brings an as-applied challenge and has not identified any specific collateral consequence to which he will be subjected. That observation, however, misses the mark. Our point is not that restitution in connection with sentencing can become a form of criminal punishment when collateral consequences attach; it is that rather, that collateral consequences can attach because that restitution is a form of criminal punishment in the first place.

escape these consequences simply by paying off their restitution, but this would be cold comfort for the many defendants who, like Norwood, may never be able to pay off their restitution. For these defendants, punishment would continue until the statutory liability period expires.

With this in mind, retroactive application of the MVRA to Norwood would increase his punishment by subjecting him to additional decades of liability, supervision, and collateral consequences, even if he ultimately never paid a cent more than he would have under the VWPA. This extension, like his increased financial obligations, is a retroactive increase in punishment that is forbidden by the Ex Post Facto Clause.

## V.    Conclusion

As the nature of criminal punishment evolves, the fundamental promise of the Ex Post Facto Clause endures. Criminal restitution—including both the amount owed and the duration of liability—is a form of criminal punishment subject to that same promise. Here, where the plain text of the VWPA cannot be construed to permit the Government's efforts to enforce Norwood's restitution order, the Ex Post Facto Clause prevents the Government from doing so by retroactively applying the MVRA's liability period to increase the duration of his restitutionary liability. We will therefore reverse the decision of the District Court and remand with instructions to deny the Government's motion to authorize the BOP to turn over the funds in Norwood's inmate account.

PHIPPS, *Circuit Judge*, dissenting.

In 1996, Michael Norwood stole a car and robbed a bank in Old Bridge, New Jersey. For those crimes, he received an initial prison sentence of life plus twenty-five years, which was later reduced through subsequent amendments so that his scheduled release is in October 2031. His sentence also required that he pay restitution in the amount of $19,562.87. But Norwood has paid only a portion of that restitution, leaving the crime victims undercompensated for over 26 years.[1]

Shortly after Norwood committed his crimes in 1996, but before he received his sentence in 1997, Congress enacted the Mandatory Victims Restitution Act, which extended the preexisting twenty-year period for charging interest on and collecting restitution awards.[2] Congress specified that the

---

[1] *See* 18 U.S.C. § 3663(c)(3)(A) (2018) (providing for the payment of restitution "to the State entity designated to administer crime victim assistance in the State in which the crime occurred"); *United States v. Bach*, 172 F.3d 520, 523 (7th Cir. 1999) (explaining that the MVRA "enables the tort victim to recover his damages in a summary proceeding ancillary to a criminal prosecution").

[2] *Compare* Mandatory Victims Restitution Act of 1996, Pub. L. No. 104-132, § 207, 110 Stat. 1214, 1238 (Apr. 24, 1996) (codified at 18 U.S.C. § 3613(b) (2018)) (providing that restitution liability "shall terminate" "20 years from the entry of judgment or 20 years after the" person liable is released from prison, whichever is later), *with* Victim and Witness Protection Act of 1982, Pub. L. No. 97-291, § 5(a), 96 Stat. 1248, 1255 (Oct. 12, 1982) (codified at 18 U.S.C. § 3663(h)(1)(A) (1994), and incorporating 18 U.S.C. § 3613(b)(1) (1994)) (providing that "[a] lien becomes unenforceable and liability to pay a fine expires . . . twenty years after the entry of the judgment").

1

MVRA should apply to convictions like Norwood's.[3]   But Norwood argues that, as applied to him, the MVRA violates the Constitution's Ex Post Facto Clause.  *See* U.S. Const. art. I, § 9 cl. 3.

For Norwood's *ex post facto* challenge to succeed, the MVRA must create a "'significant' risk" of increasing his punishment.  *Holmes v. Christie*, 14 F.4th 250, 258 (3d Cir. 2021) (quoting *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 508 (1995)).[4]   Using that effects test, the Majority Opinion holds that the MVRA poses two such significant risks.  I respectfully disagree.

First, the Majority Opinion concludes that the MVRA increases Norwood's punishment by allowing a higher "numerical limit" for the amount of money that he has to pay in restitution.  Maj. Op. at III.B.3.  At first, the Majority Opinion's position may have appeal: by affording the

---

[3] *See* Pub. L. No. 104-132, § 211, 110 Stat. 1214, 1241 (Apr. 24, 1996) (stating that the MVRA shall apply to "sentencing proceedings in cases in which the defendant is convicted on or after the [Act's] date of enactment"); 18 U.S.C. § 2248 (statutory notes).

[4] *See also Peugh v. United States*, 569 U.S. 530, 550 (2013) ("Our *ex post facto* cases . . . have focused on whether a change in law creates a 'significant risk' of a higher sentence[.]"); *Garner v. Jones*, 529 U.S. 244, 255 (2000) (explaining that a legal change violates the Ex Post Facto Clause when it creates "a significant risk of increasing [the defendant's] punishment"); *Mickens-Thomas v. Vaughn*, 321 F.3d 374, 391 (3d Cir. 2003) ("[T]he Ex Post Facto clause prohibit[s] the application of post-conviction laws to prisoners that would result in a significant increase in the chances of prolonged incarceration." (citing *Garner*, 529 U.S. at 251)).

government more time (in Norwood's case, twenty years from his release from prison) to charge interest and collect restitution, including through liens, it is likely that Norwood will pay more money than he would under the preexisting cut-off (twenty years from the date of his sentence).[5] But that analysis ignores arguably the biggest effect associated with money – its time value.

Due to considerations of opportunity cost and often inflation, money is worth more in the present than in the future.[6] That is true here as $19,562.87 was more valuable in 1996 than in 2016, when the twenty-year collection term of the prior statute expired.[7]

---

[5] *Compare* Mandatory Victims Restitution Act of 1996, Pub. L. No. 104-132, § 207, 110 Stat. 1214, 1238 (Apr. 24, 1996) (codified at 18 U.S.C. § 3613(b) (2018)), *with* Victim and Witness Protection Act of 1982, Pub. L. No. 97-291, § 5(a), 96 Stat. 1248, 1255 (Oct. 12, 1982) (codified at 18 U.S.C. § 3663(h)(1)(A) (1994)).

[6] *See, e.g.*, Lawrence Lokken, *The Time Value of Money Rules*, 42 Tax L. Rev. 1, 10–11 (1986) (describing 'time value of money' as "compensation for the use of money in every deferred payment transaction," which accounts for the reality that "the right to $1,000 in 10 years is worth less than $1,000 presently in hand"); *see also generally*, Pamela Peterson Drake & Frank J. Fabozzi, Foundations and Applications of the Time Value of Money (1st ed. 2009).

[7] For example, the annual average Consumer Price Index rose from 156.9 in 1996 to 240.0 in 2016. *See Databases, Tables & Calculators by Subject*, U.S. Bureau of Labor Statistics, https://data.bls.gov/timeseries/CUUR0000SA0?years_option =all_years (last visited Sept. 1, 2022).

The charging of a non-usurious interest rate offsets the loss in value of a restitution award over time,[8] and that is not punitive.[9] Here, by extending the period for charging interest and collecting restitution, the MVRA ensures only that Norwood does not receive a windfall from his criminal activity by having to pay later-in-time amounts that are not worth as much as if they had been paid earlier.[10] Thus, even if Norwood makes payments for a longer period of time and is subject to liens along the way, that does not mean that he will have to pay a value greater than that imposed by his initial sentence. Put differently, because paying more money later under the MVRA does not increase the value of Norwood's initial restitution

---

[8] *See Gov't of V.I. v. Davis*, 43 F.3d 41, 47 (3d Cir. 1994) ("Lost interest translates into lost opportunities, as it reflects the victim's inability to use his or her money for a productive purpose."); Catharine M. Goodwin, Federal Criminal Restitution § 7:11 (Aug. 2022 update) (explaining that "interest is simply a proxy for lost opportunity and represents time-value of the victim's money").

[9] *See United States v. Sleight*, 808 F.2d 1012, 1020 (3d Cir. 1987) (affirming the inclusion of post-judgment interest in a restitution order because "[o]nce a fine or penalty has been reduced to a judgment, it does not differ in essence from a judgment arising out of civil proceedings").

[10] *See id*. at 1021 (explaining that, if the individual ordered to pay restitution "were not required to pay post-judgment interest, he would have an economic incentive to delay such payment until the last possible opportunity," a result that "seems inconsistent with the purposes that impelled Congress to provide for restitution," at least one of which is to make the victim whole).

4

liability, it does not present a significant risk of increased punishment.[11]

Rather than appreciating the effect of the time value of money, the Majority Opinion looks to *ex post facto* jurisprudence concerning the duration of incarceration. *See* Maj Op. III.B.2 (relying on *Garner*, 529 U.S. 244; *Holmes*, 14 F.4th 250; and *Mickens-Thomas*, 321 F.3d 374). Yet those cases do not address monetary obligations. And they are distinguishable from this context because time affects incarceration and money inversely: as the period of incarceration increases, so does the punishment, but as the period for repayment of a monetary sum increases, the burden of the obligation decreases. Thus, accounting for the time value of money, the MVRA does not pose a significant risk of increasing the real value of Norwood's restitution liability.

The Majority Opinion's second rationale relates to the effect of the MVRA's extended time period for collecting restitution in combination with various other laws that impose limitations on persons with outstanding criminal restitution obligations. *See* Maj. Op. III.B.4. But Norwood brings an as-applied challenge, and none of the laws identified by the Majority Opinion have any effect on the application of the MVRA that Norwood disputes: the government's reliance on

---

[11] Because the MVRA did not alter Norwood's initial restitution liability, this case is distinguishable from *United States v. Edwards*, 162 F.3d 87 (3d Cir. 1998). That case, unlike this one, implicated the MVRA's mandatory restitution provision, 18 U.S.C. § 3663A, which by making restitution mandatory, presented a significant risk of increased initial restitution liability for a criminal defendant who may not otherwise have been sentenced to restitution. *See id.* at 89–90.

5

the MRVA to collect $5,931.40 from Norwood's inmate trust account.

Even considering the broader collateral consequences that the Majority Opinion identifies, none pose a significant risk of increased punishment to Norwood. The Majority Opinion cites laws from Florida, South Dakota, North Carolina, and Utah, but Norwood is scheduled to be imprisoned in New Jersey until 2031. Nothing in the record suggests that those laws from other states would ever have any effect on him, much less that they would pose a significant risk of increasing his punishment.[12] Nor would the New Jersey statute[13] that suspends driving privileges for persons with unpaid restitution obligations have any impact on Norwood for the next nine years while he is incarcerated. And even if that statute in combination with the MVRA did pose a significant risk of increased punishment to Norwood later (an argument Norwood never makes), the remedy would be to invalidate the MVRA's application in only that respect. Finally, the sole federal collateral consequence identified by the Majority Opinion is the condition on Norwood's supervised release that he pay the amount of unpaid restitution. But such a condition of supervised release is not new: it predates the MVRA.[14] And

[12] *See* Fla. Stat. § 98.0751(2)(a)(5)(a) (relating to the right to vote); S.D. Codified Laws §§ 23A-27-18, 23A-27-35 (relating to the right to serve on a jury); N.C. Const. art. VI, § 8 (relating to the right to run for office); Utah Code Ann. §§ 77-40a-303, 76-10-503, 77-18-114 (relating to the right to own a firearm).

[13] *See* N.J. Stat. Ann. § 2C:46-2.

[14] *Compare* Mandatory Victims Restitution Act of 1996, Pub. L. No. 104-132, § 203, 110 Stat. 1214, 1227 (Apr. 24, 1996) (codified at 18 U.S.C. § 3563 (2018)), *with* Victim and Witness Protection Act of 1982, Pub. L. No. 97-291,

6

even so, there is not a significant risk that Norwood would be in violation of that condition if he did not have the resources to make the payment.[15]   Thus, even if these collateral consequences had any relationship to Norwood's challenge to the collection of money from his inmate trust account, they would still suffer from two fatal flaws: they "rest[] on speculation," *Garner*, 529 U.S. at 256, and they produce nothing more than "some ambiguous sort of 'disadvantage,'" *Morales*, 514 U.S. at 506 n.3 (quoting *Lindsey v. Washington*, 301 U.S. 397, 401 (1937); *Weaver v. Graham*, 450 U.S. 24, 29 (1981); and *Miller v. Florida*, 482 U.S. 423, 433 (1987)).

In sum, the MVRA, as applied to Norwood, does not offend the Ex Post Facto Clause, and I would affirm the judgment of the District Court.

---

§ 3579(g), 96 Stat. 1248, 1255 (Oct. 12, 1982) (codified at 18 U.S.C. § 3663(g) (1994)); *see also* 18 U.S.C. § 3613A(a)(1) (2018) ("Upon a finding that the defendant is in default on a payment of . . . restitution, the court may . . . revoke probation or a term of supervised release, modify the terms or conditions of probation or a term of supervised release, resentence a defendant pursuant to section 3614, . . . or take any other action necessary to obtain compliance with the order of a fine or restitution.").

[15] *See* 18 U.S.C. § 3613A(a)(2) (requiring that the court, before modifying or revoking a term of supervised release, consider the defendant's "financial resources" and "willfulness in failing to comply with the . . . restitution order").