# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2023
No. 22-533

**UNITED STATES OF AMERICA,**
*Appellee,*

v.

**LAURIE WEINLEIN,**
*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the Northern District of New York

---

SUBMITTED: NOVEMBER 30, 2023
DECIDED: JULY 25, 2024

---

Before: LYNCH, PARK, and MENASHI, *Circuit Judges.*

Defendant-Appellant Laurie Weinlein was convicted of bank fraud and embezzlement from an employee benefit plan and sentenced to sixty-three months in prison, a five-year term of supervised release, and over $2 million in restitution payments. At the time Weinlein committed her crimes, the Victim and Witness Protection Act ("VWPA") provided that a criminal restitution

obligation terminated twenty years from the date of judgment. In 1996, Congress enacted the Mandatory Victims Restitution Act ("MVRA"), which extended the enforcement period for restitution orders. In 2021, in response to a subpoena from the government seeking information on her finances and her ability to pay restitution, Weinlein moved to terminate her restitution obligation. She argued that the VWPA's enforcement period had expired and that retroactively applying the longer MVRA enforcement period to allow the government to collect further restitution payments would violate the *Ex Post Facto* Clause of the Constitution. The district court denied Weinlein's motion. We affirm the judgment of the district court.

Judge Menashi concurs in a separate opinion.

_____

Adam J. Katz, John D. Hoggan, and Steven D. Clymer, Assistant United States Attorneys, *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, New York, *for Appellee.*

Samuel C. Breslin, Breslin Law Group, Albany, New York, *for Defendant-Appellant.*

_____

MENASHI, *Circuit Judge*:

Defendant-Appellant Laurie Weinlein was convicted of bank fraud and embezzlement from an employee welfare benefit plan in 2000.[1] She was sentenced to sixty-three months in prison and a five-year term of supervised release and was assessed over $2 million in

---

[1] Weinlein now uses the surname "Black." The parties refer to her by the name "Weinlein" in the briefing, however, so we do as well.

restitution payments. Weinlein committed the underlying criminal acts in 1994 and 1995. In 1996, Congress enacted the Mandatory Victims Restitution Act ("MVRA"), which extended the enforcement period for criminal restitution obligations provided by 18 U.S.C. § 3613(b). Under the predecessor statute of the MVRA, the Victim and Witness Protection Act ("VWPA"), Weinlein's restitution obligations would have terminated in 2020. Weinlein argues that applying the MVRA's enforcement period retroactively to allow the government to continue to collect restitution payments from her violates the *Ex Post Facto* Clause of the Constitution. We disagree and affirm the judgment of the district court.

## BACKGROUND

In 1989, Weinlein founded American Payroll Network, Inc. ("APN"), an employee leasing business based in Albany, New York. APN managed payroll, taxes, insurance, and other back-office functions for small companies. To do so, APN would take its customers' employees onto its own payroll, manage their taxes, insurance, and other back-office functions, and then lease the employees back to the customers, receiving a fee in return for these services.

APN maintained several bank accounts at two different banks—Marine Midland Bank and Key Bank. The company used these accounts to handle its customers' payroll and to pay its own operating expenses. Between September 1994 and February 1995, Weinlein engaged in a "kiting" scheme to defraud the two banks. The first step in the scheme involved writing a check on the Marine Midland operating account—which was not covered by the funds in the account—and depositing it in the Key Bank operating account. Key Bank, unaware that the check was not supported by sufficient

funds in the Marine Midland account, would immediately credit APN's account at Key Bank. While the check was being processed, Weinlein would wire money from the Key Bank operating account to the Marine Midland operating account to cover the overdraft, and Marine Midland would immediately credit APN's account. Finally, Weinlein would write another check on the Marine Midland operating account and deposit it in the Key Bank operating account to cover the wire transfer. By repeating this process, Weinlein artificially inflated the balances in each account—because the checks and wire transfers increased the banks' balances with the Federal Reserve even before the funds were transferred—and enabled APN to write checks for more money than it had.[2] The scheme resulted in a loss of approximately $1,000,000 to Marine Midland Bank.

In addition, beginning around July 1993, APN adopted a self-funded, self-insured health insurance plan for its customers and employees. Between 1993 and 1995, APN contracted with third-party administrators to process and pay claims. By the fall of 1994, APN was behind on its reimbursement payments to the third-party administrators, and there were substantial unpaid claims. It turned out that, between May 1994 and February 1995, Weinlein had embezzled approximately $300,000 from the plan and converted the money to her personal use.

As noted in the judgment of conviction in the district court, the conduct underlying Weinlein's convictions concluded on February

---

[2] *See Williams v. United States*, 458 U.S. 279, 281 n.1 (1982) (noting that a check kiter "take[s] advantage of the several-day period required for the transmittal, processing, and payment of checks from accounts in different banks" by using the float offered at each bank "as an interest-free loan for an extended period of time").

4

10, 1995. At that time, the VWPA, which Congress enacted in 1982, governed the issuance and enforcement of restitution orders. Under the VWPA, a defendant's liability for restitution terminated twenty years after the judgment of conviction was entered. *See* 18 U.S.C. § 3613(b)(1) (1995). In 1996, Congress enacted the MVRA as part of the Antiterrorism and Effective Death Penalty Act of 1996. *See* Pub. L. No. 104-132, tit. II, §§ 201-11, 110 Stat. 1214, 1227-41 (1996). Among other changes to the statutes governing criminal restitution, the MVRA amended § 3613(b) to provide that "[t]he liability to pay restitution shall terminate on the date that is *the later* of 20 years from the entry of judgment *or* 20 years after the release from imprisonment of the person ordered to pay restitution." 18 U.S.C. § 3613(b) (emphasis added). Congress specified that the amendment "shall, to the extent constitutionally permissible, be effective for sentencing proceedings in cases in which the defendant is convicted on or after the date of enactment of [the] Act." Pub. L. No. 104-132, tit. II, § 211, 110 Stat. 1214, 1241 (1996).

Weinlein was indicted in the Northern District of New York on May 22, 1998. The indictment charged her with two felonies: bank fraud in violation of 18 U.S.C. § 1344 and embezzlement from an employee welfare benefit plan in violation of 18 U.S.C. § 664. Weinlein was convicted on both counts on February 28, 2000, and sentenced to sixty-three months in prison and five years of supervised release. In addition, she was ordered to pay $2,171,381.89 in restitution. The district court determined that Weinlein was unable to pay interest, so it waived interest on the restitution payments. On April 11, 2000, the district court increased her restitution obligation by $14,367.98 to account for losses incurred by an additional victim, bringing her total restitution liability to $2,185,749.87.

According to the certified payment history report of December 6, 2022, Weinlein made semi-regular payments amounting to between $300 and $2,700 per year toward her restitution obligation from July 30, 2004, until June 29, 2009. By May 2, 2014, Weinlein had made a total of $9,941.24 in payments, leaving a balance of $2,175,808.63. On April 13, 2021, the Office of the United States Attorney for the Northern District of New York wrote to Weinlein, noting that no payments had been received since 2014 and asking her to complete a financial statement that would allow the office to ascertain her ability to pay.

Weinlein produced a financial statement on June 4, 2021, but the government suspected it was incomplete and requested supplemental information.[3] On July 19, 2021, after Weinlein failed to return a complete financial statement, the government issued a subpoena *duces tecum* for Weinlein's financial records and a testimonial subpoena. Weinlein moved in the Northern District of New York to quash the subpoenas and to terminate her restitution obligation. Because Weinlein resided in Texas at the time, she invoked Federal Rule of Civil Procedure 45(d)(3)(A)(ii), which requires a district court to quash or to modify a subpoena issued with respect to a person who resides more than 100 miles from the seat of the tribunal. In addition, Weinlein argued that the subpoenas should be quashed—and her restitution obligation terminated—on the ground that the enforcement period for restitution obligations under the

---

[3] In the district court, the government submitted the affidavit of an investigative financial analyst in the United States Attorney's Office who said that Weinlein had "failed to disclose a multitude of assets" in her financial statement, including "bank accounts and corporate holdings" that "could and … should be used to satisfy her restitution obligations." App'x 52.

VWPA had expired. She maintained that retroactively applying the MVRA's amendments to 18 U.S.C. § 3613(b), which extended the enforcement period until November 10, 2024—that is, twenty years from the date Weinlein was released from prison—would violate the *Ex Post Facto* Clause of the Constitution.

The district court denied the motion to terminate the restitution obligation, holding that retroactive application of the MVRA's enforcement period did not violate the *Ex Post Facto* Clause. The district court similarly declined to quash the subpoenas on that ground, but it granted the motion to quash the subpoenas under Rule 45(d)(3)(A)(ii). This appeal followed.

## DISCUSSION

Weinlein argues on appeal that retroactively applying the MVRA's longer enforcement period to allow the government to collect further restitution payments violates the *Ex Post Facto* Clause. The government suggests, however, that Weinlein lacks standing to pursue this appeal because she prevailed when the district court granted her motion to quash the subpoenas under Rule 45(d)(3)(A)(ii).

Before addressing those arguments, we consider whether we lack jurisdiction to entertain Weinlein's appeal because this action amounts to an improper collateral attack on her criminal sentence. We conclude that it does not. Next, we conclude that Weinlein has standing to appeal because the denial of her motion to terminate her restitution obligation created an independent injury in fact. Finally, on the merits, we hold that retroactively applying the MVRA's longer enforcement period to a defendant who committed crimes when the VWPA was in effect does not violate the *Ex Post Facto* Clause.

7

# I

Before reaching the merits, we address two threshold issues that could implicate our jurisdiction to consider this appeal.

## A

The first threshold issue is whether Weinlein's action constitutes an improper collateral attack on her sentence. The government argued before the district court that Weinlein's action amounts to such a collateral attack and that it is barred because she failed to raise her constitutional claims on direct appeal from her conviction. *See* App'x 45 ("With regard to [Weinlein's] attempt to collaterally attack her judgment of conviction, it is clear as a matter of law that she cannot ask the Court to do so through the instant motion because she failed to raise any such arguments on direct appeal."). The Supreme Court has said that "[o]ut of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." *Dretke v. Haley*, 541 U.S. 386, 388 (2004).

The government has abandoned that argument in its appeal to this court, and in any event we conclude that Weinlein's action does not constitute a collateral attack on her sentence. When Weinlein moved in the district court to terminate her restitution obligation, she asked the district court to declare only that the enforcement period had expired; she did not challenge the validity or the amount of the restitution order. That does not amount to a motion "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

**B**

The second threshold issue is the government's argument that Weinlein lacks standing to pursue this appeal. "One of the prerequisites to appellate jurisdiction … is that the appellant has standing to pursue the appeal," and "[s]tanding to appeal is conferred only on parties 'aggrieved' by the judgment." *Concerned Citizens of Cohocton Valley, Inc. v. N.Y. State Dep't of Env'tl Conservation*, 127 F.3d 201, 204 (2d Cir. 1997). As the government notes, the district court *granted* Weinlein's motion to quash the subpoenas under Rule 45(c), despite its rejection of her argument that the subpoenas should be quashed because enforcement of the restitution order would violate the *Ex Post Facto* Clause. "[I]f a court grants the ultimate relief a party requested, even though on grounds other than those urged by the prevailing party, that party is generally not 'aggrieved' by the judgment and may not appeal." *Id.*; *accord Allstate Ins. Co. v. A.A. McNamara & Sons, Inc.*, 1 F.3d 133, 137 (2d Cir. 1993) (holding that an appellant lacked standing because it was "not urging that we alter the judgment in any way, but rather that we alter the reasons underlying it").

It is true that Weinlein obtained the relief she sought in her motion to quash the subpoenas. But Weinlein separately moved to terminate her restitution obligation. The district court denied that motion, and Weinlein appeals from that denial. The government asserts that Weinlein "cannot show that she is aggrieved" by the denial of that motion and that she "can be aggrieved only by additional government attempts to collect restitution, which were not part of the district court litigation from which she appeals." Appellee's Br. 15.

9

We disagree. When a party has received "some, but not all, of the relief she requested," she "can appeal the District Court's order insofar as it denies her the relief she has sought." *Forney v. Apfel*, 524 U.S. 266, 271 (1998). Having succeeded in quashing the subpoenas, Weinlein may not be subject to an immediate obligation to pay restitution. Yet because the restitution obligation has not been terminated, Weinlein may be required to make payments in the future. The federal appellate courts "have generally recognized" that even "threatened harm in the form of an increased risk of future injury may serve as injury-in-fact for Article III standing purposes." *Baur v. Veneman*, 352 F.3d 625, 633 (2d Cir. 2003); *see also* 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3902 (3d ed.) (stating that "standing to appeal can be supported by abstract or slight injuries," including "probabilistic injury"). And at least two federal appellate courts have exercised jurisdiction over an appeal from the denial of a motion to terminate the appellant's restitution order. *See United States v. Rosello*, 737 F. App'x 907, 907 (11th Cir. 2018); *United States v. McGuire*, 636 F. App'x 445, 446 (10th Cir. 2016). We conclude that Weinlein has standing to maintain this appeal.

## II

We now turn to the merits of Weinlein's constitutional claim. "We review an *Ex Post Facto* [Clause] challenge—an issue of law—*de novo*." *United States v. Dailey*, 868 F.3d 322, 327 (5th Cir. 2017) (emphasis added); *see also United States v. Richardson*, 958 F.3d 151, 154 (2d Cir. 2020) ("[W]e review issues of law *de novo*.") (quoting *United States v. Selioutsky*, 409 F.3d 114, 119 (2d Cir. 2005)).

## A

The Constitution provides that "[n]o Bill of Attainder or ex post facto Law shall be passed." U.S. Const. Art. I, § 9, cl. 3. "'*[E]x post facto* law' was a term of art with an established meaning at the time of the framing of the Constitution." *Collins v. Youngblood*, 497 U.S. 37, 41 (1990). The "category" of *ex post facto* laws "includes 'every law that changes the punishment and inflicts a greater punishment, than the law annexed to the crime, when committed.'" *Peugh v. United States*, 569 U.S. 530, 532-33 (2013) (alteration omitted) (quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798) (opinion of Chase, J.)).

"To violate the *Ex Post Facto* Clause … a law must be retrospective—that is, it must apply to events occurring before its enactment—and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime." *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000) (emphasis added) (internal quotation marks omitted). In addition, "it has long been recognized by [the Supreme] Court that the constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them." *Collins*, 497 U.S. at 41. In other words, "'*[e]x post facto*' is a term of art applicable only to 'punishment,'" and "if a legislative burden is imposed 'for the purposes of punishment—that is, to reprimand the wrongdoer, to deter others, etc., it has been considered penal.'" *Doe v. Pataki*, 120 F.3d 1263, 1272-73 (2d Cir. 1997) (emphasis added) (quoting *Trop v. Dulles*, 356 U.S. 86, 96 (1958)). Because we conclude that the retroactive application of the MVRA's enforcement period to Weinlein does not violate the *Ex Post Facto* Clause in any event, we assume here—without deciding—that the MVRA imposes a criminal

11

punishment by extending the liability period of the restitution order and therefore meets the penal-statute requirement.[4]

The Supreme Court has held that the "touchstone" of the *ex post facto* analysis "is whether a given change in law presents a 'sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Peugh*, 569 U.S. at 539 (quoting *Garner v. Jones*, 529 U.S. 244, 250 (2000)). "The question when a change in law creates such a risk is 'a matter of degree'; the test cannot be reduced to a 'single formula.'" *Id.* (quoting *California Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995)). The Court long ago eliminated the "doctrinal hitch" that "purported to define the scope of the [*Ex Post Facto*] Clause along an axis distinguishing between laws involving 'substantial protections' and those that are merely 'procedural.'" *Carmell v. Texas*, 529 U.S. 513, 539 (2000). "[B]y simply labeling a law 'procedural,' a legislature does not thereby immunize it from scrutiny under the *Ex Post Facto* Clause." *Collins*, 497 U.S. at 46. Rather, "the constitutional prohibition is addressed to laws, whatever their form, which make innocent acts criminal, alter the nature of the offense, or increase the punishment." *Id.* (internal quotation marks omitted).

---

[4] The government acknowledges that "[t]he majority view among federal appellate courts is that imposition of a mandatory restitution order under the MVRA is punitive" and therefore the *Ex Post Facto* Clause applies. Appellee's Br. 24. The leading case representing the minority position is *United States v. Newman*, 144 F.3d 531 (7th Cir. 1998), in which the Seventh Circuit held that restitution orders pursuant to the VWPA are not punitive under the two-step analysis articulated by the Supreme Court in *United States v. Hudson*, 522 U.S. 93 (1997). The Tenth Circuit has also concluded that "restitution is not punitive and is therefore not governed by the [*Ex Post Facto*] Clause." *McGuire*, 636 F. App'x at 446.

Despite the clarification from the Supreme Court, in some of our cases we have continued to focus on whether a law is "procedural" or "substantive." *See, e.g.*, *United States v. Kostakis*, 364 F.3d 45, 51 (2d Cir. 2004) ("The Act's change in the standard of review is 'properly characterized as procedural rather than substantive and therefore can be applied to a pending appeal without violating the *Ex Post Facto* clause.'") (emphasis added) (quoting *United States v. Hutman*, 339 F.3d 773, 775 (8th Cir. 2003)). The government also frames the question in this case in terms of the procedural-substantive distinction.[5] Yet the Supreme Court has made clear that the *ex post facto* inquiry does not turn on whether a law is "procedural" or "substantive." The Court has emphasized that "[t]he prohibition which may not be evaded is the one defined by the *Calder* categories." *Collins*, 497 U.S. at 46.[6] The question in this case, then, is whether the

---

[5] *See, e.g.*, Appellee's Br. 11 ("The retroactively[]applied law that Weinlein challenges … is procedural and not additional 'punishment' under the *ex post facto* clause even if it may be detrimental to her."); *id.* at 23 ("[N]o *ex post facto* violation occurs if the change effected is merely procedural, and does not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt.") (internal quotation marks omitted) (quoting *Weaver v. Graham*, 450 U.S. 24, 31 (1981)); *id.* at 31 ("Although retroactive application of the MVRA's enlargement of the restitution limitations period may disadvantage Weinlein by extending the time within which the government can enforce her obligation to make her victims whole, this is a procedural modification, not a substantive one.").

[6] In *Calder*, Justice Chase identified four categories of "ex post facto laws" that fall "within the words and the intent of the prohibition":

1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules

MVRA "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when [it was] committed." *Calder*, 3 U.S. at 390 (Chase, J.).

**B**

We must decide whether the retroactive application of the MVRA's enforcement period to Weinlein increases the punishment for her crime. We conclude that it does not.

The district court sentenced Weinlein to pay $2,185,749.87 in restitution. She is liable for the same total amount regardless of the length of the enforcement period. The longer enforcement period funder the MVRA, to be sure, disadvantages Weinlein because under the VWPA her restitution obligation would have terminated in 2020, when she had paid only a fraction of the amount due.[7] But the effect on Weinlein of applying the MVRA to extend the enforcement period is analogous to the effect on a criminal defendant of retroactively extending the statute of limitations for a crime that is not yet time-

---

of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Calder*, 3 U.S. at 390 (Chase, J.). The third category is at issue in this appeal.

[7] We note, however, that Weinlein could not have been disadvantaged *at the time of her sentencing* by the decision of the district court to apply the MVRA's enforcement period retroactively. At the time of sentencing, imposing the longer enforcement period did not increase the present value of the restitution payments she was obligated to make. "[B]ecause paying more money later under the MVRA does not increase the value of [a defendant's] initial restitution liability, it does not present a significant risk of increased punishment." *United States v. Norwood*, 49 F.4th 189, 222 (3d Cir. 2022) (Phipps, J., dissenting). The MVRA disadvantages Weinlein now only because she evaded most of the restitution obligation through 2020.

14

barred—and "[t]he long-standing rule in this circuit is that Congress has the power to extend the period of limitations without running afoul of the *ex post facto* clause, provided the original period has not already run." *United States v. Morgan*, No. 96-1632, 1997 WL 268712, at *7 (2d Cir. May 21, 1997); *see also Weingarten v. United States*, 865 F.3d 48, 57 (2d Cir. 2017) ("[R]etroactively revoking a vested statute of limitations defense is different from retroactively extending the filing period for a still-viable claim."). Almost a century ago, Judge Learned Hand wrote for the court that "[c]ertainly it is one thing to revive a prosecution already dead, and another to give it a longer lease of life." *Falter v. United States*, 23 F.2d 420, 425 (2d Cir. 1928). It would be "unfair and dishonest" for the government "to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance," he explained, "[b]ut, while the chase is on, it does not shock us to have it extended beyond the time first set, or, if it does, the stake forgives it." *Id.* at 426; *see also Stogner v. California*, 539 U.S. 607, 629 (2003) ("Judge Hand's comments [in *Falter*] had support in pre-existing case law, commentary, and published legislative debates.").

Since that decision, the federal appellate courts have gone on to "hold—with near uniformity—that Congress may retrospectively extend a still-open criminal statute of limitations without offending the Constitution." *Miller v. United States*, 77 F.4th 1, 7 (1st Cir. 2023).[8]

---

[8] *See United States v. Marcum*, 199 F. App'x 261, 262 n.1 (4th Cir. 2006); *United States v. Grimes*, 142 F.3d 1342, 1351 (11th Cir. 1998); *United States v. Brechtel*, 997 F.2d 1108, 1113 (5th Cir. 1993); *United States v. Taliaferro*, 979 F.2d 1399, 1402-03 (10th Cir. 1992); *United States v. Knipp*, 963 F.2d 839, 843-44 (6th Cir. 1992); *United States v. Madia*, 955 F.2d 538, 539-40 (8th Cir. 1992); *United States ex rel. Massarella v. Elrod*, 682 F.2d 688, 689 (7th Cir. 1982);

15

The Supreme Court has been "careful to leave in place the uniform decisions by state and federal courts to uphold retroactive extension of unexpired statutes of limitations against an *ex post facto* challenge." *Stogner*, 539 U.S. at 650 (Kennedy, J., dissenting).

It follows from that precedent that Congress may also extend the enforcement period of a restitution order, at least before the original enforcement period has expired, without violating the *Ex Post Facto* Clause. We agree with those circuits that have held that retroactive application of the MVRA does not violate the *Ex Post Facto* Clause. *See Rosello*, 737 F. App'x at 908 ("The continued enforcement of Rosello's judgment of restitution under amended section 3613(b) does not violate the Ex Post Facto Clause. Amended section 3613(b) does not retroactively increase Rosello's sentence. The amended statute merely extends the span of time in which Rosello's victims can collect restitution from him."); *McGuire*, 636 F. App'x at 446-47 (holding that "restitution is not punitive and is therefore not governed by the Ex Post Facto Clause" and that "even if restitution is punitive, extending an unexpired limitations period does not violate the Ex Post Facto Clause"); *United States v. Richards*, 472 F. App'x 523, 525 (9th Cir. 2012) ("Appellee's argument that application of the MVRA would violate the Ex Post Facto Clause of the Constitution is without merit, for an expansion of the period in which Appellee is liable for restitution does not increase Appellee's punishment.").

The Third Circuit disagreed with the Ninth, Tenth, and Eleventh Circuits in *United States v. Norwood*, 49 F.4th 189 (3d Cir. 2022). The Third Circuit held that retroactively applying the longer enforcement period of the MVRA would violate the *Ex Post Facto*

---

*United States v. Richardson*, 512 F.2d 105, 106 (3d Cir. 1975); *Clements v. United States*, 266 F.2d 397, 399 (9th Cir. 1959).

16

Clause in three ways. First, it would "allow the Government to collect on the funds at issue here, which Norwood would otherwise not have to pay." *Id.* at 218. Second, it would "increase the total amount of Norwood's restitution obligation by subjecting him to decades of additional interest." *Id.* Third, it would "increase the portion of Norwood's restitution that he must ultimately pay by permitting the Government to seek collection over a greater period of time, including on future income that would otherwise never be subject to collection under the VWPA." *Id.*

The district court in this case waived Weinlein's obligation to pay interest on her restitution liability, so the second point is not relevant here.[9] The other points are unpersuasive. The Supreme Court has said that a law violates the *Ex Post Facto* Clause if it "increas[es] the measure of punishment attached to the covered crimes," *Peugh*, 569 U.S. at 539 (quoting *Garner*, 529 U.S. at 250), beyond what "the law annexed to the crime, when [it was] committed," *id.* at 538 (quoting *Calder*, 3 U.S. at 390 (Chase, J.)). The purpose of the MVRA and of the predecessor VWPA is to compensate victims. *See United States v. Maynard*, 743 F.3d 374, 377-78 (2d Cir. 2014) ("The purpose of the MVRA is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being.") (internal quotation marks omitted); *United States v. Brown*, 744 F.2d 905, 910 (2d Cir. 1984) ("[T]he VWPA was intended to compensate the victim."). "Since at least 1898, the Supreme Court has focused upon the intent underlying

_____

[9] Even so, we are inclined to the view that retroactively requiring a defendant to pay interest for a longer period does not impose a new penalty but merely "ensures … that [the defendant] does not receive a windfall from his criminal activity" in the form of the time value of money. *Norwood*, 49 F.4th at 222 (Phipps, J., dissenting).

the enactment of, or the end served by, the challenged sanction as the touchstone of the *ex post facto* analysis." *Pataki*, 120 F.3d at 1273 (emphasis added). Accordingly, the punishment that the MVRA—and the predecessor VWPA—annexes to the underlying crime is the obligation to compensate the defendant's victims in the amount determined by the district court at sentencing. [10] The MVRA's amendment to 18 U.S.C. § 3613(b) did not increase that restitution obligation but "merely increased the time period over which the government could collect" the restitution; Weinlein "remain[s] liable for the same amount of fines and restitution"—the amount imposed by the restitution order—under either version of the statute. *United States v. Blackwell*, 852 F.3d 1164, 1166 (9th Cir. 2017).

A particular defendant, such as Weinlein, may be financially unable to compensate her victims fully. But the defendant's ability to pay is not the measure of the punishment imposed. Instead, under both the VWPA and the MVRA, the appropriate sanction is the "proper amount" of compensation determined "by the court" at

---

[10] The MVRA, as its name suggests, makes restitution mandatory for certain crimes and requires the district court to "order restitution to each victim in the full amount of each victim's losses … without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). The VWPA, by contrast, required the district court to consider the defendant's economic circumstances. *See* 18 U.S.C. § 3664(a) (1995). The federal appellate courts have generally held that "the shift from discretionary to mandatory restitution increases the punishment meted out to a particular defendant." *United States v. Edwards*, 162 F.3d 87, 89 (3d Cir. 1998) (citing cases). But the MVRA's extension of the enforcement period does not itself increase the defendant's punishment, which is the obligation to compensate victims in the amount determined by the district court. Neither party in this case challenges the amount of restitution originally imposed at Weinlein's sentencing. All that is at issue here is the time in which the government may enforce that obligation.

18

sentencing and reflected in the restitution order. 18 U.S.C. § 3664(e); *id.* § 3664(d) (1995) (same). The retroactive extension of the enforcement period may increase the fraction of the restitution obligation that Weinlein will ultimately pay, but it may do so only as a consequence of Weinlein's having made only modest payments toward her obligation over the twenty years following her conviction. The extension does not impose a greater punishment than the preexisting obligation under the restitution order. The MVRA and VWPA are concerned primarily with compensation to victims; the punishment is how much is owed, not how much is paid. *See United States v. Kyles*, 601 F.3d 78, 83 (2d Cir. 2010) (explaining that an order modifying a payment schedule "left untouched the pronounced amount of restitution" and therefore created "no change in *sentence*"); *United States v. Cohan*, 798 F.3d 84, 89 (2d Cir. 2015) (explaining that "a writ of garnishment" that "seeks to enforce an already existing order of restitution" is "not part of [the] defendant's criminal sentencing because it does not implicate the *imposition* of restitution") (emphasis added). Instead, the extension does no more than "prolong the length of time in which the defendant remains responsible for the consequences of past conduct." *Miller*, 77 F.4th at 7.

The Third Circuit saw meaningful differences between the retroactive extension of an enforcement period for restitution obligations, on the one hand, and the retroactive extension of an unexpired criminal statute of limitations, on the other hand. "The liability period [of the MVRA] and a statute of limitations have very different legal effects," it said, because a statute of limitations only "creates a procedural bar to seeking a remedy or prosecuting a crime but does not extinguish a plaintiff's underlying rights or the crime itself." *Norwood*, 49 F.4th at 217. By contrast, the MVRA "expressly extinguishes a defendant's liability once the liability period has run."

19

*Id.* at 218. Additionally, a statute of limitations "ensures cases are brought while evidence is still ripe" while the liability period of the MVRA "has nothing to do with evidentiary concerns and aims instead to place a clear temporal limit on a defendant's liability." *Id.* In our view, these arguments miss the point.

With these arguments, the Third Circuit emphasized that a statute of limitations primarily serves a procedural or evidentiary purpose while the MVRA's sunsetting of restitution liability is a substantive constraint. The Third Circuit thereby resurrected the distinction between "procedural" and "substantive" laws that the Supreme Court has said should not guide the *ex post facto* analysis. *See Carmell*, 529 U.S. at 539. Setting aside that formalistic distinction, a liability period and a statute of limitations appear to be fundamentally similar. Each type of provision provides a deadline at which the consequences that normally attach to criminal activity will terminate. A person who has committed a crime may expect to be prosecuted and has no right to avoid prosecution until after the statute of limitations has expired. [11] Extending the statute of

---

[11] The criminal acquires that right *only* because of the statutory limitations period. *See* Forrest Revere Black, *Statutes of Limitation and the Ex Post Facto Clauses*, 26 Ky. L.J. 41, 41 (1937) ("'Nullum tempus occurrit regi' is a well known and ancient maxim of the common law. In the absence of some statutory bar, a prosecution can be brought no matter how long the time which has elapsed since the crime charged was committed."); *see also United States v. Summerlin*, 310 U.S. 414, 416 (1940) ("It is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights."). That legal background supports Judge Hand's intuition that not "much violence is done to our instinctive feelings of justice and fair play" when the statute of limitations is extended "while the chase is on." *Falter*, 23 F.2d at 426. Congress may decide whether to grant the right to be free from prosecution at a certain time, and it may

limitations before it has expired may increase the risk of prosecution, but it does not violate the *Ex Post Facto* Clause because the defendant has not yet acquired the right to be free from that risk. *See, e.g., Commonwealth v. Duffy*, 96 Pa. 506, 514 (1880) ("[W]here a right to acquittal has not been absolutely acquired by the completion of the period of limitation, that period is subject to enlargement or repeal without being obnoxious to the constitutional prohibition against *ex post facto* laws."). Similarly, a person who is convicted of a crime subject to the MVRA may expect to be required to make restitution to the victims. Extending the liability period may increase the risk that the defendant will ultimately be forced to pay the full amount—given that, like the defendant who has so far avoided prosecution, she has so far not paid the full amount—but it does not violate the *Ex Post Facto* Clause because the defendant does not yet have the right to be free of the obligation that the restitution order imposed.

The Third Circuit also noted that extending the enforcement period for restitution liability has collateral consequences. The extension prolongs the time during which the defendant's property is subject to a lien in favor of the government and during which he may be denied the right to vote, serve on a jury, run for office, drive, or own a firearm. *See Norwood*, 49 F.4th at 219. The court clarified that its "point is not that restitution … can become a form of criminal punishment when collateral consequences attach" but rather that "collateral consequences can attach because … restitution is a form of criminal punishment in the first place." *Id.* at 219 n.19. But even assuming that restitution is a form of criminal punishment, it does not follow that retroactively extending the enforcement period for

modify that right provided it has not already provided "its assurance" that the defendant "has become safe from its pursuit." *Id.*

restitution liability *increases* the punishment in violation of the *Ex Post Facto* Clause. The purpose of the VWPA and the MVRA is to compensate victims, and the "punishment" imposed by both statutes is the obligation to the victims set at sentencing. Depending on the defendant's financial circumstances, extending the enforcement period may—or may not—increase the amount that the defendant will actually pay. But it does not change the amount of the victims' losses or the defendant's obligation to make them whole. Until the defendant satisfies that obligation, she may be subject to certain collateral consequences. The "punishment," however, is the obligation to compensate the victims in the amount set forth in the restitution order, not the collateral consequences of failing to do so, and the time horizon in which a defendant may meet that obligation is not a separate punishment.[12] The retroactive application of the MVRA's extended enforcement period does not affect the defendant's restitution obligation and therefore does not violate the *Ex Post Facto* Clause.

## CONCLUSION

Even assuming that restitution is punitive, the retroactive application of the longer enforcement period for restitution liability under the MVRA does not violate the *Ex Post Facto* Clause of the Constitution. While retroactive application may increase the portion of the restitution obligation that Weinlein will ultimately pay, the

---

[12] In fact, a shorter time horizon might appear more punitive in some circumstances. All else equal, even if he is paying interest, a defendant might prefer to pay a given sum of money over a longer period as opposed to a shorter period because that would allow him to pay in smaller installments. If the defendant's income is so low that he likely will never be able to pay the full restitution amount, however, the defendant might prefer a shorter period.

punishment that "the law annexed to the crime, when committed" remains unchanged. *Calder*, 3 U.S. at 390 (Chase, J.). We affirm the judgment of the district court.

MENASHI, *Circuit Judge*, concurring:

I agree that Weinlein's action does not amount to a collateral attack on her sentence. I write separately to explain that, even assuming that this action constitutes such a collateral attack, a procedurally improper collateral attack on a criminal sentence is not a jurisdictional defect. So we would have jurisdiction in any event.

The government's argument before the district court that Weinlein is "precluded from attempting to raise a collateral attack here" raises three concerns. App'x 45. First, a *habeas corpus* proceeding under 28 U.S.C. § 2255 is usually the proper mechanism for a federal prisoner to subject a criminal sentence to collateral attack. Because this is not a *habeas corpus* proceeding, we may not be able to entertain Weinlein's collateral challenge to the restitution order in the context of her motion to terminate the order. Second, "§ 2255 may not be used to bring collateral challenges addressed solely to noncustodial punishments" such as restitution orders. *Kaminski v. United States*, 339 F.3d 84, 87 (2d Cir. 2003). Because Weinlein is no longer in custody, we may not be able to address a collateral challenge to her restitution order even if we overlook the form in which that challenge was brought. Third, the "procedural default" rule "prevents claims that could have been brought on direct appeal from being raised on collateral review absent cause and prejudice." *Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010); *see also* 3 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 631 (5th ed.) ("In a collateral attack under § 2255, the district court may not consider any matter that the petitioner should have raised at trial or on direct appeal and did not."). Because Weinlein could have raised the matter of the MVRA on direct appeal but did not, we may not be able to

address that argument even if we entertain a collateral challenge in this posture.

Neither party raises these concerns in this appeal, but it is appropriate to consider the concerns because of the potential implications for our subject-matter jurisdiction. "When a requirement goes to subject-matter jurisdiction," the Supreme Court has said, "courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

The third concern is the simplest to resolve. The Supreme Court has held that when a petitioner in a *habeas corpus* proceeding has failed to raise a claim on direct appeal from his conviction, "[a] court of appeals is not required to raise the issue of procedural default *sua sponte*." *Trest v. Cain*, 522 U.S. 87, 89 (1997) (internal quotation marks omitted). The court of appeals need not do so because "the presence of a procedural default" does not "deprive[] the federal court of jurisdiction." *Id.* As the Court has explained, "in the habeas context, a procedural default, that is, a critical failure to comply with state procedural law, is not a jurisdictional matter." *Id.*[1] Our court has also held in the habeas context that the government may "forfeit[] or waive[]" the argument that a defendant's collateral attack has been procedurally defaulted for failure to raise the issue on direct appeal. *Rosario*, 164 F.3d at 732. That means the procedural default is not

---

[1] *Trest* involved a state-court conviction, while Weinlein was convicted in federal court, but the principle is the same. *See Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1998); *see also United States v. Quinn*, 826 F. App'x 337, 339 n.2 (5th Cir. 2020); *Oakes v. United States*, 400 F.3d 92, 95 (1st Cir. 2005); *Howard v. United States*, 374 F.3d 1068, 1073 (11th Cir. 2004); *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000); *Hines v. United States*, 971 F.2d 506, 508 (10th Cir. 1992).

jurisdictional because "[j]urisdictional requirements cannot be waived or forfeited [and] must be raised by courts *sua sponte.*" *Boechler, P.C. v. Comm'r of Internal Rev.*, 596 U.S. 199, 203 (2022).

Of course, "calling a rule nonjurisdictional does not mean that it is not mandatory." *Gonzalez*, 565 U.S. at 146; *see also Donnelly v. CARRP*, 37 F.4th 44, 56 (2d Cir. 2022) ("Though not jurisdictional, mandatory claim-processing rules remain mandatory."). "The Supreme Court has repeatedly said that 'if a party properly raises' a mandatory claim-processing rule, the rule is 'unalterable.'" *Donnelly*, 37 F.4th at 56 (alteration omitted) (quoting *Manrique v. United States*, 581 U.S. 116, 121 (2017)). [2] In this case, however, while the government argued before the district court that Weinlein could not collaterally attack her sentence because she failed to raise her arguments on direct appeal, *see* App'x 45, it has abandoned that argument on appeal. And there is no question that "objections based on nonjurisdictional claim-processing rules may be waived or forfeited." *Donnelly*, 37 F.4th at 54 (quoting *In re Indu Craft, Inc.*, 749 F.3d 107, 112 n.7 (2d Cir. 2014)).

The first two concerns more plausibly affect our jurisdiction. We have held that a federal court lacks subject-matter jurisdiction to

---

[2] The "procedural default doctrine" requires that "[o]ut of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." *Dretke v. Haley*, 541 U.S. 386, 392, 388 (2004). The "general rule" is subject only to "a narrow exception," not applicable here, "when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense," *id.* at 388, and courts are not to "riddle the cause and prejudice standard with ad hoc exceptions whenever they perceive an error to be 'clear' or departure from the rules expedient," *id.* at 394-95.

consider a collateral challenge to the restitution component of a criminal sentence under § 2255. *See United States v. Rutigliano*, 887 F.3d 98, 105 (2d Cir. 2018); *Kaminski*, 339 F.3d at 91. But § 2255 is not the only possible avenue for Weinlein to subject her restitution obligation to collateral attack. Writing for himself in *Kaminski*, Judge Calabresi argued that an extraordinary writ such as the writ of error *coram nobis* could provide collateral relief from the non-custodial aspects of a criminal sentence—such as a restitution order—that could not be challenged under 28 U.S.C. § 2255. *See* 339 F.3d at 89-91; *see also United States v. Morgan*, 346 U.S. 502, 507 (1954) (recognizing that the All Writs Act, 28 U.S.C. § 1651, "gives federal courts power to employ coram nobis"). The Seventh Circuit has specifically "approved the use of a writ of error coram nobis to challenge a restitution order." *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997).

In *Rutigliano*, meanwhile, our court acknowledged "[t]he possibility that *coram nobis* could afford collateral relief from restitution," and we considered whether, assuming it could do so, the petitioner in that case would be entitled to relief from a restitution order. 887 F.3d at 108 ("[W]e need not decide if, or when, *coram nobis* might be invoked collaterally to challenge the restitution component of a criminal sentence because, even assuming [the petitioner] could do so here, her claim would necessarily fail on the merits."). In conducting that analysis, we observed that the burden on a party seeking *coram nobis* relief is "heavy":

> To secure *coram nobis* relief, a petitioner must show that (1) "there are circumstances compelling such action to achieve justice," (2) "sound reasons exist for failure to seek appropriate earlier relief," and (3) "the petitioner continues to suffer legal consequences from his

4

conviction that may be remedied by granting of the writ."

*Id.* (quoting *Foont v. United States*, 93 F.3d 76, 79 (2d Cir. 1996)).

Weinlein may not be able to meet these requirements. In particular, she may not have a "sound reason" for her failure to raise her *ex post facto* argument on direct appeal from her conviction in 2000. But the availability of the writ of error *coram nobis*—and our prior precedent considering on the merits whether a petitioner challenging a restitution order was entitled to *coram nobis* relief—indicates that the district court had subject-matter jurisdiction to consider Weinlein's motion to terminate the restitution order. Weinlein could request *coram nobis* relief from the district court, and the district court could consider whether that relief was available to Weinlein and whether Weinlein should receive it. *Cf. Morgan*, 346 U.S. at 506-07 ("If there is power granted to issue writs of coram nobis by the all-writs section, we hold it would comprehend the power for the District Court to take cognizance of this motion in the nature of a coram nobis. To move by motion instead of by writ is purely procedural.") (citation omitted). If Weinlein cannot establish entitlement to the writ, that would mean only that she has failed to state a claim on which relief can be granted. It would not mean that the district court lacked jurisdiction to hear her request.

In this case, we have no occasion to consider the *coram nobis* framework—or Weinlein's compliance with it—because the government has waived the issue of whether Weinlein meets the requirements for *coram nobis* relief. The government argues only that Weinlein lacks standing to pursue this appeal and that her *ex post facto* argument fails on the merits. I would therefore conclude—even assuming that this action involves a collateral attack on Weinlein's sentence—that neither her use of a motion to terminate the restitution

order nor her failure to raise the *ex post facto* argument on direct appeal deprives us of jurisdiction to consider that merits argument.